Woodward *v.* Harris.

to authorize a non-resident creditor to sue out an attachment; so that if Valtellina is, as was alleged, only temporarily here, and not domiciled in this state, he may institute these proceedings.

This disposes of the two first objections made in behalf of the debtor. The other one relates to the form of his application. But the statute only requires that he shall state the amount of his claim and the nature of it, so far as to declare whether it arises upon contract or upon a judgment or decree rendered within this state. Those things are set out in this application, and therefore it is sufficient.

There being then, according to the view which I take of this case, no valid objections to these proceedings, they must be remitted to the officer who issued the warrant.

---

SAME TERM.    *Before the same Justice.*

WOODWARD *vs.* HARRIS and ASPINWALL.

H. and W. were rival bidders for a contract with the navy department. The proposals of H. were ultimately accepted, but previous to their acceptance, H. entered into a contract with W., signed by himself alone, agreeing to assign to W. the contract with the government if he should obtain it, on W.'s giving the requisite security in the sum of $100,000, and paying H. $5000 a year, for ten years. Several months having elapsed, and the contract with the government not being completed by H., W. wrote to the secretary of the navy, claiming that he was entitled to the contract, as the next lowest bidder. Subsequently H. agreed to assign the contract to A. The latter, and his partner, became H.'s sureties to the government; and A. took an assignment of the contract, without any previous notice of the agreement between H. and W. On a bill filed by W. against H. and A., praying for a specific performance of the agreement between him and H., and for an injunction restraining A. from proceeding to execute the contract made by H. with the government; *Held* that it was not a proper case for an injunction, or a specific performance, because of want of mutuality in the agreement between H. and W., and because a specific performance by H. had been rendered impracticable, by his assignment to A. without notice.

*Held also* that W. having, by his application to the navy department to have his bid accepted, treated H.'s contract as being at an end, he could not afterwards treat it as existing, and claim an assignment of it.

Whenever it has become impossible, from subsequent events, for a party to perform his contract—as by a subsequent sale of the subject matter thereof, without notice— a court of equity will not decree a specific performance.

In such a case, *it seems* the bill may be retained, for the purpose of awarding compensation.

The power of a court of equity to issue preliminary injunctions ought to be exercised with extreme caution, and applied only in very clear cases. *Per* EDMONDS, J.

The writ will not be awarded in doubtful cases, or in new ones not coming within well established principles. *Per* EDMONDS, J.

IN EQUITY. Harris and Woodward were rival bidders for a contract with the navy department for carrying the United States mail for ten years, from Panama to Astoria in Oregon. Harris' bid was $199,000 a year, and Woodward's was $250,000 to build and run monthly three war steamers. Before the proposals were accepted, H. entered into a contract with W., signed by himself alone, agreeing to assign to W. the contract with the government, if he obtained it, on W.'s furnishing to the department the necessary security for the performance of the contract, which would be $100,000, and paying H. $5000 a year while the contract continued. This was in July, 1847. On the 4th of November following, W. wrote to the secretary of the navy, claiming that as H. had declined or delayed entering into the contract, his bid having been accepted, he, W., was entitled to the contract on his bid, which was the next lowest : W. alleging in his bill that this delay was entirely owing to H. On the 12th of November, an agreement was entered into between Harris and Aspinwall, that A. should furnish the security, and have an assignment of the contract. They proceeded together to Washington, where, on the 16th of November, a contract was entered into and executed between the secretary of the navy and Harris, signed by Aspinwall and Edgar Howland, as sureties, to the amount of $100,000, for its faithful performance, and the contract was immediately transferred to A. by an assignment executed by H. The sureties were approved by the secretary, but in order to comply with the usual practice of the government, the contract was delivered to A. to have

Woodward *v.* Harris.

him on his return to New-York, procure from the United States district attorney his certificate as to the sufficiency of the sureties. Such certificate was accordingly obtained, and a more particular agreement between A. and H., providing for the manner in which the contract should be carried out by them on joint account, was drawn up. But on the 19th of November, before the certificate of the district attorney had been transmitted to the department, and before the particular agreement last mentioned was signed, Aspinwall was informed for the first time, of the agreement of H. to assign the contract to W. But it being then too late to retract, and Harris insisting upon A.'s proceeding as they had agreed, the particular agreement was signed, the certificate as to the sureties was forwarded to Washington, and A. took the necessary steps to enter upon the execution of the contract with the government. This bill was filed to compel a specific performance of the agreement between H. and W., and to restrain A. from proceeding under the contract with the department; and an order was obtained for the defendants to show cause why an injunction should not issue.

*B. F. Butler,* for the defendants, showed cause.

*R. B. Kimball,* contra.

EDMONDS, J. I am very much inclined to consider this as one of that class of cases where equity would interfere to compel a specific performance, although it is a personal contract; because it would be so difficult, if not impossible, to measure the damages for a breach of it. But there are some features of this case peculiar to itself, which render it very questionable whether a specific performance would, in this instance, be enforced. In the first place, there is a want of mutuality, which is always necessary to warrant this court's entertaining jurisdiction. Harris alone, it seems, is bound by the contract. He has agreed with Woodward, that he would sell the contract made with government, to him, but Woodward has no where

agreed that he would buy. It has been left optional with him whether he would or not. This is a sufficient and well established ground of objection to entertaining a bill for specific performance. (*Benedict* v. *Lynch*, 1 *John. Ch. Rep.* 373. 2 *Story's Eq. Jur.* § 723.) Courts of equity act upon the ground that the remedy, if it exists at all, ought to be mutual and reciprocal as well for the vendor as for the purchaser.

The next objection is that a specific performance by Harris has been rendered impracticable by his assignment to Aspinwall without notice. Mr. Aspinwall avers that, until the 19th of November, he had never heard of any agreement between Harris and Woodward. Before that time, and on the 11th or 12th of November, an agreement had been made between H. and A. On the 15th, they went to Washington and concluded with the navy department the terms of the contract for carrying the mail. On the 16th, he and Edgar Howland gave their bond to the government, in the penalty of $100,000, to perform the contract; and on the same day H. made an absolute assignment of the contract to him, and delivered it to him; the execution and delivery of such assignment being exacted by Aspinwall as a condition precedent to the delivery of the bond to the navy department. On the same day the contract between the secretary of the navy and Harris was executed and delivered to Aspinwall, the secretary expressing himself satisfied with the security. Every thing therefore was complete, binding the respective parties to each other, and conveying to A. all Harris' interest in the contract, three days before he heard of the contract between Harris and Woodward. To such a state of things the rule applies, that wherever it has become impossible, from subsequent events, for the party to perform his contract, as by a subsequent sale of the subject matter of the contract without notice, courts of equity will not decree a specific performance. (2 *Story's Eq. Jur.* § 714. *Greenaway* v. *Adams*, 12 *Ves.* 395.) In such a case, the bill, it seems, may be retained for the purpose of awarding compensation. This is questioned in England, by Lord Cottenham, in 5 *Myl. & Cr.* 1, but seems

to have been well settled in our court of errors in *Woodcock* v. *Bennett*, (1 *Cowen*, 711.)

I have not overlooked the considerations suggested by the plaintiff's counsel, going to show that the contract between A. and H. was not in fact completed till after the 19th, viz. that the contract with the department had been sent to New-York to obtain the approval of the district attorney as to the competency of the security, and was then in A.'s hands for that purpose; and the fact that the agreement between them as to the particular manner in which the contract should be executed by them had not then been signed. The most that could be said of this is, that it rendered it doubtful whether A. had in fact taken an assignment without notice of W.'s claim. But that doubt is not enough to warrant the interposition of this court by a preliminary injunction. This power ought to be exercised with extreme caution and applied only in very clear cases. (2 *Story's Eq. Pl.* § 959, *b*. *Brown* v. *Newall*, 2 *Mylne & Craig*, 570.) The writ will not be awarded in doubtful cases, or new ones not coming within well established principles. (*Bonaparte* v. *Camden & Amboy R. R. Co.*, 1 *Bald. Cir. C. Rep.* 218.) Yet I do not consider that even this doubt is well founded. The contract with the department had been entrusted with Mr. Aspinwall, not for the purpose of giving him any option whether it should be operative or not, but merely to procure a certificate as to the sureties; and if, on being notified of Woodward's claim, he had attempted to withhold it from the secretary, he could have been compelled to surrender it. Therefore whether any farther particular agreement had been made or not between H. and A. as to the manner in which they should conduct the adventure, was entirely immaterial in respect to the validity of the assignment made on the 16th of November. That assignment was absolute, and from that day Aspinwall's interest became vested, and his title perfect.

There is, however, still another reason why there ought to be some hesitation on the part of this court in interfering on the complaint of Woodward. The bids were made in June, the lowest being Harris' for $199,000, and the next being

Astor *v.* Turner.

Woodward's for $250,000 a year. In July, Harris agreed to assign the contract, if he got it, to Woodward, on W.'s furnishing the security. On the 4th of November, Woodward claimed from the department the acceptance of his bid, because of Harris' having declined or delayed entering into a contract. Is there any doubt, if the department had listened favorably to his claim, that he would have insisted that his contract with Harris was entirely at an end? And how can he build his suit here upon the very opposite of that? It is true, there may be a satisfactory explanation of this, but that explanation is not yet before the court; and the case, therefore, in this regard, stands in too doubtful a posture to justify an injunction.

For these reasons, the order to show cause must be discharged.

---

SAME TERM. *Before the same Justice.*