## Fraser *v.* Lee et al.

*Vault — Burial lot — Title transferred, how — Disposal of the dead — Rights which stranger may acquire in burial lot.*

1. The disposal of the dead, from motives of sanitation and health, is a state function. The state, by legislative enactment, has given exclusive and complete control thereof to municipalities within the territorial limits of each.
2. A document, in order to effectually pass title to a burial lot, need not take the form of a real estate deed.
3. The law will not permit a stranger to acquire a certificate of title to a vault or burial lot and then found upon it the right to disturb the remains of the dead.
4. A stranger who acquires a certificate of title to a vault or burial lot may dispose of whatever rights of burial there may be in vacant space therein, but such person by acquiring such certificate of title obtains no right to remove, disturb or in any manner interfere with the bodies and remains of the dead interred in such vault or burial lot. The dead placed in such vault or burial lot are entitled to remain there until their removal is sought by their next of kin, or until the authorities, in the exercise of their care for the public health, deem it advisable to remove them by virtue of a sale or abandonment of the cemetery.

(Decided November 12, 1917.)

Appeal: Court of Appeals for Cuyahoga county.

*Mr. A. R. Odell,* for plaintiff.

*Messrs. Marvin & Marvin,* for defendants.

Lieghley, J. The plaintiff, Mary Spargo Fraser, filed her petition in the court below in which she alleged that the city of Cleveland is the owner of the Monroe Street Cemetery; that one Henry Potter, in 1871, purchased Lot No. 42 in Section 4 in said cemetery from the city and re-

ceived the usual certificate of title; that in 1891 he erected thereon a vault at a cost of about three thousand dollars ($3,000.00), suitable for the interment of eight bodies or more; that in September, 1891, said Henry Potter died intestate without issue, leaving surviving him his wife, Mary Ann Potter, and that he was interred in said vault where his body now is; that said Mary Ann Potter died in April, 1898, and left surviving her a sister, Emma Caley, who has since died, and the children of said Emma Caley, the plaintiff and William Caley, and some other nephews and nieces; that plaintiff is one of the next of kin and one of the nearest in kinship of said Henry and Mary Ann Potter, deceased; that said defendants, Lovisa Viola Lee and Isidore Steinman, claim to own said vault and lot, but they, or neither of them, have any right or title to or interest in said burial lot or vault; that neither of said defendants is related by blood or marriage to the persons whose bodies are now interred in said vault or to any of the persons for whom the said Henry Potter erected the same; that the said defendants, except the city, are trying to sell said lot and vault to strangers, or to anyone who will agree to purchase the same, in utter disregard of the wishes and feelings of the surviving friends and next of kin of the deceased; that the said city of Cleveland will issue a permit, unless restrained, for the removal of said bodies; and that said plaintiff is in the possession of said easement of burial in said lot. Wherefore, the plaintiff prays that defendants be required to set up their claim or interest in said lot and vault and that the same be declared null and void by the

court; that the said defendants be permanently enjoined from selling or mortgaging said lot or vault; that they be permanently enjoined from removing said bodies interred therein or any of them and from interfering in any way with said lot or vault or the bodies now interred therein and from defacing in any way said vault; and that said city be enjoined from issuing a permit for or consenting to the removal of said bodies or any one of them.

The defendants, excepting the city, admit the ownership of the cemetery by the city, the purchase of the lot by Henry Potter, as alleged, the erection of a vault thereon by him substantially as alleged, the death of Henry Potter in 1891, leaving surviving him his wife, Mary Ann Potter, without issue of his body, and his burial in said vault; that said Mary Ann Potter never remarried and that she died in April, 1898, leaving no children, and was interred in said vault. They deny the possession of said vault and lot by plaintiff and allege that she has no right, title or interest therein. And they deny each and every allegation, except as admitted, contained in the petition. Further answering, they allege that Henry Potter died seized in fee simple of the title to the said lot and vault and that his wife, Mary Ann Potter, upon his death, succeeded thereto as his sole heir at law; that in August, 1895, the said Mary Ann Potter transferred to Cassa A. Taylor, by a sufficient instrument of conveyance, for a valuable consideration, all her right, title and interest in and to said lot and vault; that said conveyance is recorded in the records of the Monroe Street Cemetery; that said Cassa A. Taylor died in 1907 seized in fee simple

of said lot and vault and left as her sole heirs at law the defendants, Lovisa Viola Lee and Isidore Steinman, her daughters; and that as such heirs at law they are now the owners in fee simple of said lot and vault and actually have the possession thereof and have had the same since the death of their mother. Wherefore, they pray that the petition of plaintiff be dismissed and that the title of the defendants be quieted.

The proof showed the purchase of the lot, the relation of the parties, the burial of the bodies in said vault, substantially as alleged by plaintiff. The proof further showed the execution of a certificate of transfer to the mother of defendants substantially as alleged by them in their answer and cross-petition.

The first question to be determined is what interest the defendants, the daughters of Mrs. Taylor, now have in said lot and vault.

The title to and right of possession of the Monroe Street Cemetery is in the city by statute. Section 4160, General Code.

When this burial lot was sold to Potter in 1871 the usual deed was executed to him and recorded in the records of the cemetery. Whether that deed was in form absolute on its face, or otherwise, Potter acquired no greater right than that of burial, ornamentation and erection of monuments. When he died his wife succeeded to just such interest in the land as her husband had. When Mrs. Potter transferred by paper writing, duly recorded in the records of the cemetery, her title or interest in the lot and vault to Mrs. Taylor, Mrs. Taylor received and acquired no greater interest than Potter ob-

tained by deed, with the easement of burial limited
to unoccupied space.  When Mrs. Taylor died, her
daughters acquired the same interest, which is an
easement of burial, of ornamentation, of construc-
tion and maintenance of monuments, encumbered
as above stated.

The disposal of the dead, from motives of sani-
tation and health, is a state function.  The state, by
legislative enactment, has given exclusive and com-
plete control thereof to municipalities within the
territorial limits of each.  Sections 4154 to 4205,
General Code.

It is clear from a careful reading of this chapter
that the deed authorized to be given to a pur-
chaser of a burial lot conveys only the right of
burial therein, and constitutes only an easement of
burial.  The city is authorized to remove the bodies
from the cemetery even beyond the territorial limits
of the city, if, in the judgment of the authorities,
from the standpoint of public health, such pro-
ceedings are deemed advisable.

The plaintiff claims that the paper writing given
by Mrs. Potter to Mrs. Taylor was not sufficient
in form to convey any interest in this lot to her, but
that the necessary document should take the form
of a real estate deed to effectually pass title.  With
this we do not agree.  In view of the fact that the
burial of the dead is a matter of state supervision
and has been placed exclusively within the power
and control of the city, and also the regulation of
the cemetery and the sale of lots therein in man-
ner and form prescribed, we are of the opinion
that the paper writing transferred to Mrs. Taylor
whatever interest Mrs. Potter at the time had in

said vault and land in respect to the right of burial.
Whether it be called an easement, a privilege or a
license, under the circumstances a formal deed was
not required to transfer whatever interest she had.
6 Cyc., 717.

We, therefore, conclude that the plaintiff is not
entitled to an order restraining the defendants
from selling or transferring whatever rights or in-
terest they may have in and to said lot.

Plaintiff prays for the further relief of an order
restraining the defendants from removing, inter-
fering with, or in any manner disturbing, the
bodies now interred in said vault and burial lot.

The disputed proof is to the effect that the de-
fendants offered to sell said vault and lot for the
sum of $400 with the bodies remaining in the vault,
or $600 with the bodies removed. The undisputed
proof is that an advertisement was inserted in one
of the local papers offering said lot for sale; and
that the vault is now almost filled with remains of
the dead. The circumstantial fact is almost con-
clusive that any idea of sale of said vault and lot
carries with it the necessity of removal of the
bodies; for, with them in the vault, the same is of
little or no value to a prospective purchaser other
than the next of kin of those interred therein. We
think the evidence tends to show that it is the in-
tention of said defendants to sell said vault with
the idea of removal of the bodies, unless restrained
by this court from so doing. However, the de-
fendants claim that by virtue of title in them they
have a right so to do, and that the plaintiff has no
standing in court to object thereto.

An examination of the statutes relating to cemeteries will disclose that in all that is said about supervision of cemeteries, the sale of lots, etc., nothing whatever is said of a right of disinterment, except on the part of the city, in the event of the sale of the cemetery or abandonment thereof.

In Section 3467, in the chapter relating to township cemeteries, will be found a provision to the effect that the authorities in charge of a cemetery may grant a permit to next of kin under certain conditions to disinter a body. Whether or not this section is a general statute or relates only to township cemeteries is immaterial to us, for the reason that it is the only right granted anywhere in the statute law of the state to any person to disinter a body, except the authorities in charge of the cemetery. Nowhere is the right given to a stranger to do so. From nowhere in the statutes can the claim be deduced that any idea of barter and sale was contemplated in the legislation relating to cemeteries and the proper disposal of the dead. We believe that an examination of the authorities will sustain us in the view that the right to disinter has always been reserved to the next of kin and the authorities in charge of a cemetery. Such we believe to be the policy of the law. 1 High on Injunctions (4 ed.), Sections 351 and 853, and authorities following therein.

In a prosecution under a criminal statute for removal of a body from a grave without the consent of the deceased person obtained in his lifetime, or from his near relatives, after death, the court says:

"The offence does not consist merely in the removal of a dead body, but in its removal without the consent of such deceased person obtained in his or her lifetime, or of the near relatives of the deceased since his or her death." *Tate* v. *The State,* 6 Blackf. (Ind.), 110, 112.

Quoting from Parker & Worthington on Public Health and Safety, Section 360:

"The grant of a right or license of interment is always impliedly restricted by the condition that whenever it shall become necessary, for the public health or welfare, that the grounds shall no longer be used for the purpose of interment, the right or license shall be deemed to be revoked or repealed; and, in such case, the only right of the grantee is to have the remains of the dead removed and properly deposited in a new place of sepulture. So, if a place of burial be taken for a public use, the next of kin of persons buried there are entitled to be indemnified for the expense of removing and suitably reinterring the remains of the dead."

In the case of *First Presbyterian Church* v. *Second Presbyterian Church,* 2 Brewster (Pa.), 372, the syllabus reads as follows:

"The removal of the remains of persons interred in a burial ground, without the consent of their families, enjoined at the suit of such families as have the right to inter in said ground."

The facts in above case disclose that one purchased the land upon which the burial ground was situated, and the court holds that equity will interfere to restrain him from removing the bodies therefrom notwithstanding his legal title if at-

tempted to be done without the consent of those interested.

In the case of *Wormley* v. *Wormley,* 207 Ill., 411, land was set apart by the owner for cemetery uses and bodies were buried in the part uniformly dedicated to such uses. It was held that a court of equity will enjoin him and those claiming under him from defacing or meddling with the graves, and that anyone having friends or parties buried upon the ground may bring the action for such relief. To the same effect is *Boyce et al.* v. *Kalbaugh et al.,* 47 Md., 334.

Quoting from 1 High on Injunctions (4 ed.), Section 703:

"*Interference with burial ground.* In conformity with the general principle that an act of trespass for which it is impossible to give an adequate remedy by damages at law may be enjoined in equity, it is held that where land has for many years been held and used by the owner as a family burial ground, defendants may be enjoined from encroaching thereon and from a threatened removal of the remains of persons interred therein. And in such case, the right to equitable relief is based upon the fact that there can be no standard by which to estimate the damages sustained, since the extent of the injury is dependent upon the feelings of the persons aggrieved, and upon their peculiar views of the sacredness of the ground in question. So the invasion or appropriation, without authority, of lands owned by the trustees of a religious organization and used by them for burial purposes, and the attempt to take such property from the owners without authority, and to devote

it to another purpose, constitute an injury of such an irreparable nature as to justify the interposition of equity by injunction. And where land was dedicated by a former owner for use as a burial ground, and has been so used for many years, a subsequent owner of the premises may be enjoined from interfering with their use for burial purposes at the suit of the residents of the neighborhood having friends buried there, plaintiffs suing for themselves and for all others having a like interest. So where a father buried the remains of his deceased son in his own lot in a cemetery, with the full approval and consent of the widow of the deceased, the widow was enjoined from removing the remains to another place for burial."

In the case of *Beatty* v. *Kurtz,* 2 Pet., 566, which involved the question of title, the court says at page 584:

"The property consecrated to their use by a perpetual servitude or easement, is to be taken from them; the sepulchres of the dead are to be violated; the feelings of religion, and the sentiment of natural affection of the kindred and friends of the deceased are to be wounded, and the memorials erected by piety or love to the memory of the good, are to be removed, so as to leave no trace of the last home of their ancestry to those, who may visit the spot in future generations. It cannot be that such acts are to be redressed by the ordinary process of law. The remedy must be sought, if at all, in the protecting power of a court of chancery; operating by its injunction to preserve the repose of the ashes of the dead, and the religious sensibilities of the living."

Also see *Weld* v. *Walker,* 130 Mass., 422; *Smiley* v. *Bartlett,* 6 C. C., 234, and *Pansing* v. *Miamisburg,* 11 C. C., N. S., 511.

It is to the interest of the public health that one who has been placed in his final resting place, under the supervision of the proper authorities, shall remain there. The policy of the law is that he shall remain there, with the exception of deference for the wishes of the next of kin. It was never contemplated or intended that a burial lot in a public cemetery should be made the subject-matter of barter and sale, nor can such claim be predicated upon the acquisition of a certificate of transfer of title to said lot. The idea of making the lot of land chosen by a man in his lifetime as a last resting place for himself and his family a subject for public auction is offensive to the sensibilities of mankind. It is contrary to the public policy of this state, as evidenced by its legislation, and contrary to the public policy of all other states to which our attention has been called, and the laws and statutes of which we have examined, that a stranger should be permitted to acquire a certificate of title to a burial lot and then found upon it the right to disturb the remains of the dead and thereafter commercialize the easement of burial so obtained. We doubt the right of the city so to do.

We conclude that no power rests in this court to restrain the defendants from disposing of whatever rights of burial, etc., in vacant space acquired by virtue of the transfer made by Mrs. Potter to Mrs. Taylor, but we do hold that, whatever interest was so acquired, the same is shorn of any right to remove, disturb or in any manner interfere with

the bodies and remains of the dead interred in said vault or said burial lot. The dead placed in this vault, in part selected by them, are entitled to remain there until their removal is sought by their next of kin; or until the authorities, in the exercise of their care for the public health, deem it advisable to remove them by virtue of a sale or abandonment of the cemetery.

A decree may be drawn perpetually restraining the defendants Lovisa Viola Lee and Isidore Steinman, their successors in title, and anyone claiming through or under them or to act for and in their behalf, from removing, disturbing or in any manner interfering with the bodies now interred in said vault and burial lot.

The costs are assessed against the defendants.

*Injunction allowed.*

CARPENTER, J., concurs.

GRANT, J., dissents.