**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-3132
_____

GERALD MINNITI,
Appellant

v.

CRYSTAL WINDOW & DOOR SYSTEMS PA, LLC;
CRYSTAL WINDOW & DOOR SYSTEMS, LTD
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 4-21-cv-01788)
U.S. District Judge:  Honorable Matthew W. Brann
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 30, 2024
_____

Before: SHWARTZ, MATEY, and SCIRICA, <u>Circuit Judges</u>.

(Filed: October 2, 2024)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Gerald Minniti appeals the District Court's order granting summary judgment to his former employer, Crystal Window & Door Systems ("Crystal"). Because there are disputed facts concerning whether Minniti engaged in protected activity and whether that activity led to his termination, we will reverse.

$I^1$

A

Minniti was the plant manager at Crystal's Pennsylvania window factory where he worked under the supervision of Chief Operating Officer Andy Shashlo. The factory struggled for years before Minniti's hiring because of poor management and employee performance. Crystal also had absenteeism issues and fired workers for unexcused absences. If, however, an employee had a documented valid reason for his absence, Crystal excused it. Minniti understood that he was hired to improve the factory's operational and financial performance, but the factory continued to struggle.

Shashlo visited the factory weekly and led daily calls with Minniti and other managers. The daily calls focused on the day's production goals and worker attendance. In early June 2020, Shashlo told Minniti that he was "concerned with [the] lack of

---

[1] When reviewing a motion for summary judgment, we view "the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Burns v. Pa. Dep't of Corr., 642 F.3d 163, 170 (3d Cir. 2011) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)).

progress in [the factory's] financials," and identified "specific points that need[ed] to be addressed immediately."[2] App. 317.

During a call on June 16, 2020, Shashlo learned that two production workers were absent. Shashlo directed Minniti and Amanda Cardillo, a human resources specialist, to fire the employees, notwithstanding that Cardillo told Shashlo that both employees had notified Crystal that they would be absent due to medical issues and would bring in doctors' notes upon their return. Shashlo replied that "he didn't care if they had [excuses] or not," and that "he wanted them fired." App. 152 (Minniti Dep. Tr. 100:23-101:1). Minniti refused to fire the employees given Crystal's excused absence policy and "explained to [Shashlo] that these were the only two African-American employees that we had and . . . [i]t was going to look bad."[3] App. 152 (Minniti Dep. Tr. 101:5-9). Shashlo said that "he didn't care," App. 152 (Minniti Dep. Tr. 101:5-9), and that the employees "wouldn't be able to afford an attorney," App. 154 (Minniti Dep. Tr. 106:22-24).

The next day, Minniti met with Cardillo and told her that "he was worried that [Shashlo] . . . was [] racist" and "that [Shashlo] was firing the[ employees] due to [their skin] color." App. 354.[4] Less than a week later, Shashlo and three other Crystal

---

[2] Minniti and Shashlo had a challenging relationship. In March 2020, for example, Minniti called Crystal's President to complain that Shashlo was verbally abusive towards him and other employees.

[3] Minniti and Shashlo both testified that Shashlo knew the men, which would provide the jury a basis to conclude that he knew their race before Minniti commented on their race at the June 16 meeting.

[4] Cardillo also testified that "there was a couple other people of the same ethnicity that was let go around that time," that is, before June 16. App. 357.

executives decided to fire Minniti.  Although the termination letter stated that Minniti's position was eliminated as part of an effort "to ensure the financial stability of the company," days after he was fired, Crystal hired a new production manager at the factory and two other employees received raises because they assumed some of Minniti's responsibilities.  App. 238.  At his deposition, Shashlo offered a different reason for Minniti's termination, namely, that he "wasn't performing or wasn't doing the job that we brought him in to do."  App. 268 (Shashlo Dep. Tr. 79:9-11).

B

Minniti sued Crystal for retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a), 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 955.[5]  The District Court granted summary judgment for Crystal on these claims, finding that Minniti did not engage in protected activity because (1) his conduct was too equivocal to constitute protected activity as it did not "clearly communicat[e] to Crystal 'a belief that the employer has engaged in a form of employment discrimination,'" and (2) "no reasonable person could have believed that [Minniti's] actions were in opposition to racial discrimination, or even that he subjectively believed he was opposing racial discrimination."  Minniti v. Crystal Window & Door Sys. PA, LLC, 702 F. Supp. 3d 261, 271-72 (M.D. Pa. 2023) (quoting Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 555 U.S. 271, 276 (2009)).

_____

[5] Minniti also brought a claim for retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654, but does not appeal the District Court's dismissal of that claim.

Minniti appeals.

## II[6]

### A

Because Minniti's retaliation claims rely on circumstantial evidence, we assess them under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).[7]  Under McDonnell Douglas,

> a plaintiff asserting a retaliation claim first must establish a prima facie case by showing (1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.  If the plaintiff makes these showings, the burden of production of evidence shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action.  If the employer advances such a reason, the burden shifts back to the plaintiff to demonstrate that the employer's proffered explanation was false,

---

[6] The District Court had jurisdiction under 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.

Our review of a district court's order granting summary judgment is plenary. Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "To survive a motion for summary judgment, the non-moving party . . . must set forth specific facts such that a reasonable jury could find in the non-moving party's favor, thereby establishing a genuine issue of fact for trial."  Hugh v. Butler Cnty. Fam. YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

[7] We have applied McDonnell Douglas to retaliation claims brought under Title VII, § 1981, and the PHRA.  See Moore v. City of Phila., 461 F.3d 331, 342 (3d Cir. 2006) (Title VII claims); Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 346 (3d Cir. 2022) (§ 1981 retaliation claims); Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005) (PHRA claims).

and that retaliation was the real reason for the adverse employment action. Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015) (alteration in original) (internal quotation marks and citations omitted). Applying this framework to the evidence viewed in Minniti's favor, his retaliation claims survive summary judgment.

B

As explained below, a reasonable jury could find that Minniti established a prima facie case of retaliation because (1) he refused to fire the employees and conveyed to Shashlo that their firing could be viewed as discriminatory, (2) his termination constituted an adverse action, and (3) there was a causal relationship between his protected activity and termination.

An employee engages in protected activity when he opposes what he believes to be "unlawful discrimination under the relevant statute." Daniels, 776 F.3d at 193–94 (quotation marks and citation omitted). The employee's opposition must not be equivocal or vague, Moore v. City of Phila., 461 F.3d 331, 343 (3d Cir. 2006), and his belief that he is opposing an unlawful practice must be objectively reasonable and held in good faith, id. at 341.

Here, a reasonable jury could conclude that Minniti engaged in protected activity by opposing the order to fire two African-Americans employees. Minniti's opposition to this perceived racially discriminatory directive was embodied in both his comments to Shashlo and his refusal to fire the employees. Each conveyed Minniti's view that Shashlo was engaging in race discrimination by ordering the firing of the factory's only African-American employees for absences that were considered excused under company

6

policy. Accordingly, "[t]here was nothing vague or equivocal" about Minniti's opposition to Shashlo's order. Id. at 343; see Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006) (stating that a plaintiff must "explicitly or implicitly allege[] that a protected characteristic was the basis for the adverse employment action" and must identify that objectionable practice "at least by context" (internal quotation marks and citation omitted)); see also Crawford, 555 U.S. at 277 (stating that an employee's "refus[al] to follow a supervisor's order to fire a junior worker for discriminatory reasons" constitutes a protected form of "opposition"). Minniti's belief that Shashlo was engaging in unlawful discrimination was objectively reasonable given: (1) Crystal's excused absence policy; and (2) Shashlo's failure to articulate a reasoned basis for departing from it. Minniti's subsequent conversation with Cardillo provides evidence that his belief was in good faith.

The evidence also supports the other elements of a prima facie case. Minniti's termination was an adverse employment action, see LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007), cert. denied, 553 U.S. 1004 (2008), and a reasonable jury could find that it was motivated by his protected activity given: (1) the "unusually suggestive" temporal proximity of one week between his actions and termination, Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 307 (3d Cir. 2012) (quoting LeBoon, 503 F.3d at 232) (finding a one-week gap to be "in the realm of what this Court and others have found sufficient [to establish an inference of causation] at the prima facie stage"); and (2) Crystal's inconsistent explanations for Minniti's termination, see LeBoon, 503 F.3d at 232 (noting that an employer's inconsistent

7

explanations for a firing may suggest a retaliatory motive). Minniti's termination letter states that Minniti was fired because Crystal was "implementing a layoff of certain positions" "to ensure the financial stability of the company,"[8] App. 238, but Shashlo testified that he was fired because he "wasn't performing or wasn't doing the job that we brought him in to do," App. 268.

Thus, there is evidence which, viewed in Minniti's favor, would establish a prima facie case of retaliation.

## C

We next examine whether Crystal has offered a legitimate, non-retaliatory reason for Minniti's firing, and whether Minniti has rebutted that explanation. See Daniels, 776 F.3d at 193. Crystal offered two facially legitimate reasons for Minniti's termination: (1) Crystal's need "to ensure the financial stability of the company," and (2) Minniti's failure to achieve the goals he was hired to accomplish. App. 238. The record, however, provides a basis upon which a reasonable jury could conclude that Crystal's proffered reasons were pretextual. First, there was a close temporal proximity between Minniti's protected activity and his termination. Second, as explained above, Crystal offered inconsistent reasons for firing him. See supra note 8 and accompanying text; Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (stating that "implausibilities, inconsistencies,

---

[8] Viewing the evidence in the light most favorable to Minniti, a reasonable jury could find that this proffered financial reason is undermined by testimony that (1) the company hired a new manager and gave raises to existing managers shortly after Minniti was fired, suggesting that his termination was not a bona fide cost-cutting measure, and (2) the factory was just beginning to recover from pandemic-related difficulties in June 2020, making it an unusual time for Crystal to fire Minniti for poor performance.

incoherencies, or contradictions in the employer's proffered legitimate reasons" may demonstrate the pretextual nature of the employer's asserted rationale).

Because a reasonable jury could conclude that Minniti engaged in protected activity which led to his termination, the District Court incorrectly granted summary judgment in Crystal's favor.

III

For the foregoing reasons, we will reverse and remand.[9]

---

[9] Judge Matey would affirm the District Court's determination that Minniti lacked "an objectively reasonable belief, in good faith, that the activity [he opposed] is unlawful under Title VII." Kengerski v. Harper, 6 F.4th 531, 536 (3d Cir. 2021) (alteration in original) (quoting Moore, 461 F.3d at 345). As the District Court explained, truancy was a recurring problem at the plant and there was no evidence that racial animus motivated Crystal. Nor did Minniti formally raise the issue of discrimination with the company, stating only that it would "look bad" to terminate two absent employees. That is not unequivocal disagreement with discrimination because Minniti "must have stood in opposition to it—not just objectively reported its existence or attempted to serve as an intermediary." Moore, 461 F.3d at 350. As Minniti did not have an objectively reasonable belief, he cannot satisfy the standards of Title VII.