JAMES BOYCE and WILLIAM MOODY *vs.* Z. W. KAL-
BAUGH and N. M. AMBROSE.

### DEDICATION.

*Dedication of land to public and private uses—Waiver of title
by acquiescence—Evidence of dedication—When Equity will
interfere to protect burial grounds—Estoppel.*

No matter what may have been the prior rights of parties to land, they must
be held to have been waived and subordinated to the public and pious use
of the land as a depository of the dead, when the land has been so used
with the knowledge and acquiescence of the parties.

The notorious use of the property for twenty years for such humane purpose
as the burial of the dead, with the acquiescence of the owner, affords pre-
sumptive evidence of its dedication for such purpose.

The total inadequacy of any proceeding at law to give full redress for the
disturbance of burial places furnishes sufficient ground for the intervention
of a Court of equity; and the relatives of the dead deposited therein may
invoke the remedial process of the Court to prevent the desecration of the
ground where repose the ashes of their kindred.

The continued user of land as a burial place, with the knowledge and acquies-
cence of the owner, is supported on the ground of a dedication to public
and pious uses.

Where parties claiming title to land, and those under whom they claim, have
stood by and acquiesced for a long period of time in the user of lands,
devoted more especially to such a sacred purpose as a burial ground, they can-
not be permitted to defend themselves by the assertion of a stale legal claim;
they must be held to be effectually estopped.

APPEAL from the Circuit Court for Garrett County, in
Equity.

In May, 1828, John Templeman conveyed to five trus-
tees of the Union Meeting House Society, of that part of

Allegany County now constituting Garrett County, about two acres of land, to be held in trust by them for the said society, and for the sole use and purpose of a meeting house, school house and grave yard. Afterwards, in 1829, Templeman being greatly in debt, conveyed his real estate to trustees, for the benefit of creditors, and amongst other lands he conveyed the said two acres which he had previously conveyed to the trustees of the Union Meeting House Society aforesaid. The lands so conveyed by Templeman were by the trustees sold in parcels or tracts, and the parcels or tracts purchased, were afterwards by the purchasers sold, until in 1875, a certain William Moody claimed title, under a deed from James Boyce, to one part of the said two acres conveyed by Templeman in trust for the said Union Meeting House Society, and Z. W. Kalbaugh and another claimed title to the other part of the said two acres. While Moody was preparing to build a store-room on that part of the land claimed by him, he was enjoined at the suit of Henry Hight, who claimed to be the surviving trustee of the society aforesaid, and by Z. W. Kalbaugh and N. M. Ambrose. From the decree of the Court enjoining the defendants from *excavating, building upon, or otherwise interfering with so much of the lot of ground as had been used as a burial ground,* this appeal was taken.

The cause was argued before BOWIE, MILLER, ALVEY and STEWART, J.

*Lloyd Lowndes, Jr.,* for appellants.

*A. H. Blackiston,* for appellees.

STEWART, J., delivered the opinion of the Court.

Upon the final hearing of this case before the Circuit Court for Garrett County, as a Court of equity, a perpe-

tual injunction was granted prohibiting the defendants from excavating, building upon, or otherwise interfering *with so much of the lot of ground*, described in exhibit A, as has been heretofore used as a *burial ground.*

From that decree this appeal has been taken.

The proof in the record is abundant that the parcel of land in controversy included in the decree, had been used as a burial ground by the inhabitants of the village of Bloomington, and no matter what may have been the prior rights of the appellant to the property, they must be held to have been waived, abandoned or subordinated to its public and pious use as a depository of the dead, with the knowledge and acquiescence of the owner.

The notorious use of the property for upwards of twenty years, for such humane purpose as that to which it was appropriated with the acquiescence of the owner, affords presumptive evidence of its dedication as such; and the total inadequacy of any proceeding at law to give full redress for its disturbance, furnishes sufficient ground for the intervention of a Court of equity.

The complainants, who are relatives of the dead deposited therein, may invoke the remedial power of the Court, to prevent the desecration of the ground where repose the ashes of their kindred.

The material facts of this case, both as to the subject-matter and the competency of the complainants to maintain their suit, are analogous to the case of *Beatty & Richie vs. Kurtz and others,* decided by the Supreme Court of U. S., in 2 *Peters,* 566.

It was there held not to be a case for the redress of a mere private trespass: the property dedicated to public and pious uses threatened with desecration—the sepulchres of the dead with violation—the sentiment of natural affection of the surviving kindred and friends of the deceased to be wounded, the memorials erected by piety and love removed, so as to leave no traces of the last home of their

ancestors to those visiting the spot in future generations, were acts that could not be redressed by the ordinary process of law. The remedy must be sought in the protecting power of a Court of equity, operating by injunction to preserve the asylum of the dead and quiet the just and natural sensibilities of the living.

The user is valid upon other principles than those which ordinarily apply between grantor and grantee.

It is supported as a dedication of the lot to public uses.

The case of *Brown vs. Trustees of the M. E. Church of Baltimore City*, 37 *Md.*, 109, decided by this Court, is to the same effect, in the assertion that the remains of the dead are not to be disturbed, except upon most unequivocal grounds.

When the appellants, and those under whom they claim, have stood by and acquiesced, for such long period, in the user of lands devoted more especially to such sacred purpose as the burial of the dead, they cannot in good conscience and according to the principles of enlightened humanity, be permitted to defend themselves by the assertion of a stale legal claim; but they must be held to be effectually estopped from doing so.

*Decree affirmed.*