Hillsborough,  
  Oct. 1, 1907.

## WILSON *v.* READ *& a.*

As matter of law, a dead body becomes after interment a part of the ground to which it was committed.

Courts of equity have jurisdiction to settle controversies as to the burial of the dead, the care of their remains after burial, and the preservation of the place of interment from wanton violation or unnecessary desecration.

Where no trace of a dead body was discovered when a grave was reopened, but the earth in which it was buried was removed to a new location, a decree that the remains be restored to their original place of interment would be futile and cannot properly be made.

The right of the owner of a burial lot to disturb a grave thereon and the authority of the next of kin to prevent a removal of the remains of a person there interred are not absolute, but are bounded by rules of propriety and reasonableness determinable by a court of equity upon due application.

The next of kin of a person deceased cannot prevent the owners of a cemetery lot from using the precise spot where the remains were interred for a subsequent burial, unless such use would constitute a wanton invasion or unnecessary desecration of the original place of sepulchre.

BILL IN EQUITY, for the restoration of the remains of Harriet A. Read to the place of their original interment. Trial before *Peaslee*, J., at the January term, 1907, of the superior court. The defendants excepted to the overruling of their demurrer and to a decree ordered for the plaintiff.

Harriet A. Read, daughter of John L. and Lucy Read, died in 1855, aged seven months, and was buried in a cemetery lot owned by her father. Lucy died in 1860, and was buried by her husband in the same lot, leaving a space for a grave between hers and Harriet's. Mary A., daughter of John L. and Lucy, died in 1863, and was buried in the grave next Lucy's on the other side. In 1863, John married Mary E. Read. He died in 1895, and by his will devised the cemetery lot to his wife, Mary E., who buried him in the vacant space between the graves of his first wife and Harriet. Mary E. died in 1904, having expressed a wish to be buried beside her husband. She was buried in a grave directly in the rear of her husband's, but by whom does not appear. The following year Grace W. Read, one of the defendants, procured a permit for the relocation of the remains of Harriet and Mary E., and the remains of the latter were placed in the grave beside her husband. No trace of the remains of Harriet was discovered, but

the earth where she had been buried was removed to the new location. The work was done in a decent and proper manner, and the provisions of the statute relating to such matters were complied with.

The plaintiff is a daughter of John and Lucy. The defendants are children of John and Mary E., and, as heirs of Mary E., to whom John willed the lot, are the owners of it. In the same year after the death of John, Mary E. gave the plaintiff consent in writing to the erection by her of stones for her mother and sister and also at the grave of her father. The plaintiff has erected headstones to her father, mother, and sisters.

*Edgar I. Kendall* and *George B. French*, for the plaintiff.

*Martin & Howe*, for the defendants.

PARSONS, C. J.  In the absence of any information as to the terms of the decree for the plaintiff, to which exception was taken, it is presumed that the decree was drawn to effect the purpose of the bill—the restoration of the remains of Harriet A. Read to their place of original interment. The fact that no trace of the remains which the plaintiff asks to have restored was discovered in the grave where they were originally buried discloses the futility of such a decree. If none was found in the grave, it is clear none can be in the place where the earth of the grave was deposited. The law does not require that to be done which is impossible or useless. *Wells* v. *Burbank*, 17 N. H. 393, 411; *Copp* v. *Henniker*, 55 N. H. 179, 211; *Cahoon* v. *Coe*, 57 N. H. 556, 579. "It is one of the maxims of the common law, and which is a dictate of common sense, that the law will not attempt to do an act which would be vain, or to enforce an act which would be frivolous. *Lex nil frusta facit. Lex non cogit ad vana seu inutilia.*" *Kent*, C. J., in *Huntington* v. *Nicoll*, 3 Johns. 566, 598. The court has no power to order one to do what the law will not require him to do because of its impossibility or futility. A contract to convey real estate of which the vendor has no title will not be decreed, for such a decree would be simply nugatory. Bisp. Eq. 435; *Woodward* v. *Harris*, 2 Barb. 439; *Fitzpatrick* v. *Featherstone*, 3 Ala. 40.

Not only did the body of Harriet become, as matter of law, after burial a part of the ground to which it was committed (*Meagher* v. *Driscoll*, 99 Mass. 281, 284), but from lapse of time it has, as a physical fact, become indistinguishable from the soil in which it was placed. The body was returned to the parent earth for dissolution. *Gilbert* v. *Buzzard*, 3 Ph. Ecc. 335, 350.

That purpose has been accomplished. Whatever right the plaintiff may have to protect the burial place of her sister, no decree of the court can effect the reburial of remains no longer in existence. The plaintiff is not entitled to a decree to carry out the impossible purpose of her bill. The exception to the decree is therefore sustained.

The defendants also except to the order overruling the demurrer to the bill. In the absence of the allegations of the bill, the question directly presented by this exception is merely that of jurisdiction of the subject-matter. It is well settled, that in this country, in the absence of ecclesiastical tribunals exercising such jurisdiction in England, courts of equity have power to settle controversies as to the burial of the dead, the care of their remains after burial, and the preservation of the place of interment from wanton violation or unnecessary disturbance. *Page* v. *Symonds*, 63 N. H. 17, 19, 20, and authorities cited. The defendants do not contest the power of the court, and the only question that can be raised is whether upon the facts the plaintiff is entitled to any relief. The cases are numerous which involve controversies as to the place of burial of a deceased relative, or as to a change of location of the remains after burial, or the diversion to other purposes of land once dedicated for use as a burial place; but none of them raises the precise question found here. This is not a controversy as to the removal of the remains of Harriet to some other location, or of the use of the burial place for other than burial purposes. The sole question appears to be whether the plaintiff can prevent the use by her sisters and brother, the owners of the burial lot, of the precise spot for the burial of their mother which was once used for the repose of their sister's remains.

*Page* v. *Symonds*, 63 N. H. 17, was an application to enjoin the removal of the remains of the plaintiff's relatives, by public authority, from a burial ground discontinued because of public necessity. It was then said (*pp.* 19, 20) : "Strictly speaking, there is no right of property in a dead body. . . . But while it is not property in the ordinary sense of the term, it is regarded as property so far as to entitle the relatives to legal protection from unnnecessary disturbance and wanton violation or invasion of its place of burial. The plaintiff, notwithstanding he is neither the owner of the soil of the cemetery nor of the remains of his deceased relatives interred there, may nevertheless be authorized to invoke protection against unnecessary desecration of their place of burial." If the action of the defendants in opening the grave of Harriet was criminal, or a wrong against the plaintiff, this proceeding is not brought to punish that action, or to recover damages for the injury to the plaintiff's right.

Is the plaintiff entitled to an order requiring the defendants to remove the remains of their mother from the place where, in accordance with her expressed wish, they now rest beside those of her husband? The question is not whether the court, in the exercise of a sound judgment, would have enjoined the opening of the grave of Harriet for the purpose of interring the remains of the defendants' mother, but is whether the court can now order the removal of the remains of Mary E. from the spot where they now rest. The plaintiff has no title to the burial lot. She is not next of kin to Mary E., and can have no voice in the selection of a resting place for her remains. Her sole interest arises from her relationship to Harriet. Under the decision in *Page* v. *Symonds*, she would be entitled to an order requiring the removal of the remains of Mary E. from their present resting place, if it could be found that their continuance there was a "wanton violation or invasion" of the place of Harriet's burial—an "unnecessary desecration" of the spot. But the reported facts are insufficient to sustain such a finding.

John Read, the father of all the parties to the controversy, owned the lot, and in 1855 buried therein the remains of his daughter Harriet, who died at the age of seven months. Subsequently he buried in the same lot his wife and another daughter, the graves being so arranged as to leave a space between those of Harriet and his wife, while the other daughter, Mary A., was buried in the grave immediately on the other side of her mother's. In 1863, John married Mary E. He died in 1895, having devised the burial lot to his wife Mary E. She buried him in the lot beside his first wife, in the vacant space between that grave and the spot where Harriet's remains were buried. Mary E. died in 1904, having expressed a wish to be buried beside her husband. The defendants, her children who now own the lot, have now buried her in accordance with her wish. The question is, whether such burial is such a desecration of the spot used for the entire dissolution of Harriet's remains that the court is authorized to order the remains of Mary E. to be again dug up and buried elsewhere. When a body is once buried, courts are slow to order its removal and will not do so except under circumstances of extreme exigency. This follows from considerations of the public health and welfare, as well as from a respect to the dead and consideration for the feelings of those who survive. *Gardner* v. *Cemetery*, 20 R. I. 646, 649,—78 Am. St. Rep. 897 ; *Choppin* v. *Dauphin*, 48 La. An. 1217, 1220,—55 Am. St. Rep. 313 ; *Thompson* v. *Deeds*, 93 Ia. 228,—35 L. R. A. 56. Where there is controversy as to the location of the grave, great weight is given to the wishes of the deceased, if known. *Pierce* v. *Cemetery*, 10 R. I. 227,—14 Am. Rep.

667. It has even been said to be "the duty of courts to see to it that the expressed wish of one as to his final resting place shall, so far as it is possible, be carried out." *Thompson* v. *Deeds*, 93 Ia. 228,—35 L. R. A. 56.

The body of Mary E. now rests in the place where she desired it to lie, beside her husband. The fact that the soil in which she lies once performed for the body of her husband's infant child the same service it is now performing for hers, is not a sufficient reason why her remains should again be exhumed, and her reasonable and proper wishes be defeated. No necessity probably has yet arisen in this country for holding that the right of burial is merely for the purpose of dissolution, generally requiring about a generation, and that each generation must give way to succeeding ones in the use of soil dedicated for that purpose. *Gilbert* v. *Buzzard*, 3 Ph. Ecc. 335. This case does not require such holding; for while, under the circumstances of the case as disclosed before the grave was opened, a refusal to permit the opening of Harriet's grave for the burial of Mary E., or to ascertain whether it contained any remains of the former occupant, might not have been erroneous as matter of law, the fact being established that the burial made by the defendants involved no disturbance of Harriet's remains, and being one that was otherwise fit and proper to be made, and having been made, no sufficient reason appears for disturbing the existing situation. None can be suggested except the injury to the plaintiff's feelings. In view of the relationship of the parties, an objection of this character by the plaintiff is too clearly fanciful and unreasonable to serve as a foundation for such an order. The defendants, as the owners of the lot, had not the absolute right to disturb the grave already upon the lot. Neither has the plaintiff, as next of kin, an absolute right to prevent the removal of the remains of one buried there, or other use of the land. The rights of each are bounded by rules of propriety and reasonableness determinable by a court of equity upon due application. This is the holding, in effect, of all the authorities. *Page* v. *Symonds*, supra; *Pulsifer* v. *Douglass*, 94 Me. 556,—53 L. R. A. 238; *Weld* v. *Walker*, 130 Mass. 422; *Pierce* v. *Cemetery*, 10 R. I. 227,—14 Am. Rep. 667; *Hackett* v. *Hackett*, 18 R. I. 155; *Toppin* v. *Moriarty*, 59 N. J. Eq. 115; *Smith* v. *Shepherd*, 64 N. J. Eq. 401; *Wynkoop* v. *Wynkoop*, 42 Pa. St. 293,—82 Am. Dec. 506; *Fox* v. *Gordon*, 16 Phila. 185; *Thompson* v. *Deeds*, 93 Ia. 228,—35 L. R. A. 56; *Larson* v. *Chase*, 47 Minn. 307,—28 Am. St. Rep. 370.

As the plaintiff has not the absolute right to require the removal of the remains of Mary E., and as the evidence has no tendency to establish the necessity, reasonableness, or propriety of their re-

moval, no order to that effect can be made. The case does not show that such an order has been made; but as the exceptions raise the question whether any decree can be made for the plaintiff, the power to make such an order has been considered. Some facts appear in the case as to the erection of gravestones by the plaintiff upon the lot, but it does not appear that any orders are necessary or were asked for in reference to them. As upon the facts found the plaintiff is not entitled to any relief, the order will be,

*Exception sustained : bill dismissed.*

All concurred.