MARTHA S. PAINTER AND OKLE C. PAINTER

vs.

THE UNITED STATES FIDELITY AND GUARANTY
COMPANY, A BODY CORPORATE.

*Corpses: rights of custody and control. Insurance company's
right of inspection.*

In the absence of any contract or testamentary disposition to
the contrary, the surviving husband or wife, or next of kind, has
a *quasi* property right in the body of a decedent, not in the
general property sense, but for the purpose of determining who
shall have the custody of the body in preparing it for burial.
p. 308

Courts of Equity will protect such general rights from unrea-
sonable disturbance.                                    p. 308

An insurance company had issued a policy to the insured
payable to his family in the sum of $20,000 in the event of his
death resulting directly and exclusively of all other causes, from
bodily injuries sustained, during the life of the policy sold,
through accident (excluding suicide, etc.), and provided that
the insurer should have the right and opportunity to make an
autopsy in case of death; upon the death of the insured such
examination to make an autopsy was refused; *held,* that under
such circumstances the insurer had a right to make an exam-

ination superior to any property right in any member of the family, and upon such demand being refused a Court of Equity has jurisdiction to entertain a bill for discovery and to appoint a receiver to have custody and control of the remains pending such an examination.                                      p. 309

*Decided April 17th, 1914.*

Appeal from the Circuit Court of Baltimore City. (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Arthur L. Jackson* and *James A. Stewart,* for the appellant.

*J. Kemp Bartlett* and *Randolph Barton, Jr.* (with *Barton, Wilmer & Stewart,* and *Bartlett, Poe, Claggett & Bland* on the brief), for the appellees.

CONSTABLE, J., delivered the opinion of the Court.

The appellee, a corporation of the State of Maryland, engaged in the general surety and casualty business, filed a bill on its own behalf and on behalf of all others similarly interested, against Charles Glaser, alleging, in substance, as follows: That on the 21st day of April, 1913, is issued a policy to Edward O. Painter, of Jacksonville, Florida, providing, among other things, that it would pay to the family of the assured the sum of twenty thousand dollars in the event of his death "resulting directly and

exclusively of all other causes from bodily injuries sustained during the life of the policy solely through accidental means (excluding suicide, sane or insane, or any attempt thereat, sane or insane)". That on the 22nd day of May, 1913, the said Painter died, it being claimed that he fell from a ferry boat near the City of Jacksonville and was drowned. Whether death was the result of the fall or whether he was drowned or whether death was the result of natural causes or other cause was unknown to the complainant, but was being carefully investigated. That shortly after the death of said Painter portions of his brain, lungs, stomach, liver, kidneys and other organs were taken from his body and shipped to Baltimore for the purpose of having an analysis made thereof. That in pursuance of the clause in said policy providing as follows: "The company shall in case of injury or disability, have the right and opportunity to examine the person of the assured or beneficiary, when and as often as it requires, and shall also have the right and opportunity to make an autopsy in case of death," the complainant demanded an opportunity to make an autopsy, but said opportunity had been refused it. That an examination of said organs was made by the said Charles Glaser, a chemist, and by a Dr. McCleary, a pathologist, acting under the instructions of the said Glaser, and that a report of said examination had been forwarded to the coroner of Duvall county, Florida. That the complainant claims, under the said provision of the policy, the right to have independent examination made by a chemist and pathologist. It is further alleged that the family of the deceased or their representatives have demanded the organs from the said Dr. Glaser, and it is charged that if the organs are allowed to pass out of the possession of the said Glaser and into the possession of the representatives of the family the ability of the complainant, and all the other insurance companies carrying insurance on the life of the assured, amounting to more than one million dollars, will be interfered with, and the question of the condition

of the assured at the time of his death may be impossible to determine. The relief prayed for was an injunction restraining the defendant, Glaser, from parting with the possession of the organs then in his possession, subject to the further order of the Court.

The Court granted the relief prayed, and two days thereafter the appellee filed in the cause a petition setting out just what portion of the organs of the deceased Dr. Glaser admitted having in his possession, and alleging that Dr. Glaser had informed it that, shortly before the granting of the injunction, he had turned over to representatives of the family a portion of the remains previously in his possession. It is further alleged that from the attitude of the representatives of the family it was impossible to reach an agreement as to a further examination. Therefore, the prayer was that a receiver might be appointed to take charge of the organs then in possession of Charles Glaser, and that said receiver be authorized and directed to make a complete chemical and pathological examination under the direction of the Court.

Thereafter petitions were filed by the widow and only child and daughter of the deceased, asking to intervene as defendants, the former because as widow she was entitled to the custody of the organs and was also the beneficiary under certain of the policies upon the life of her husband; the latter because she was the beneficiary named in the policy issued by the complainant. The Court granted the prayers and Martha S. Painter, widow, and Okle C. Painter, daughter, were made defendants.

Charles Glaser filed an answer denying all objection to the relief sought, but Martha S. and Okle C. Painter each filed demurrers to the bill and petition. The Court, however, overruled the demurrers, and answers were filed by each of them.

The testimony taken is so voluminous that it is utterly impossible, in this opinion, to give any more than the result

we have reached from a careful reading of it as contained in the record.

Edward O. Painter, a business man of Jacksonville, Florida, while crossing the St. John's River on a ferry boat was seized with a violent coughing and vomiting attack. Going to the side of the boat, presumably to avoid vomiting on the deck of the boat, he fell to the water and was not recovered until a few hours later, when his dead body was taken to an undertaker's establishment. At its arrival there it was met by Drs. Perry and Boyd, family physicians of the deceased, who were later joined by Dr. Upchurch representing the coroner of the county. The body was opened and certain organs were forwarded to Dr. Simon, of Baltimore, for an analysis. Dr. Simon being out of Baltimore, the organs were turned over to Dr. Charles Glaser. Drs. Boyd and Perry immediately after the shipment of the organs took train for Baltimore, and upon their arrival seemed to dominate the situation. At the beginning there seemed to be a conflict as to who was in control—whether the examination was under the authority and control of the coroner of Duvall county or of the representatives of the family. Dr. Glaser finally after frequent telegraphic communication from the coroner decided in favor of the authority of the coroner.

Afterwards it was determined to have a pathological as well as a chemical examination made, and Drs. Perry, Boyd and Glaser agreed to have this made by Dr. Standish McCleary. In the meantime officials of the complainant had been notified, by their representatives in Florida, that the organs had been shipped to Baltimore. Dr. Carroll, a representative of the complainant, finally succeeded in locating the whereabouts of the organs and received permission from Dr. Glaser to be present at the chemical examination to be made by him, but upon demanding from Drs. Perry and Boyd the same privilege, under the right given by the policy, he was denied the right. The representatives of the company

made every effort to be present at the examination, but were repeatedly refused, but were offered by the family physicians and their attorney portions of the different organs to make a separate examination therefrom, but this offer was refused, on the ground that a complete examination could not be made from parts only. Further, Drs. Glaser and McCleary both testified that as they were working under the control of the coroner, they would not have consented to give up any portion of the organs, since that would have interfered with their making a proper examination. The chemical examination was then made by Dr. Glaser and the pathological by Dr. McCleary. It is not necessary to go into detail as to the methods of these examinations, except to say that Dr. Glaser was of the opinion that he had found antimony, a poison, and in fact had written his report to that effect, but later upon further tests being made was of the opinion that the object found was bismuth, a harmless drug, instead. The examination made by Dr. Glaser, so far as it went, seems to have been thorough, but that it was incomplete is evidenced by the testimony given by him.

Q. Dr. Glaser, it is a fact, is it not, that you stated to Messrs. Barton and Stewart that your examination was not complete and thorough, and that it should go further, do you remember saying that? A. Yes; I said it in the sense that I simply obeyed orders. Q. That is orders from whom? A. Perry and Boyd, the order to examine the stomach. It was not left to my judgment how far I should go.

On May 31st, the attorney for the family wrote Dr. Carroll that he withdrew all objections to a representative of the complainant being present at the pathological examination to be made by Dr. McCleary. Dr. Carroll testified that he had no recollection of having seen this letter until after his return from Jacksonville on June 20th. However, the opportunity was not accepted.

There was considerable testimony as to the action of the representatives of the complainant in Florida as to its bear-

ing upon the question of waiver, but we are of the opinion that, so far as the objects of this cause are concerned, nothing was done there to affect the right here demanded.

The cost of the Baltimore examination was borne by the family and the life insurance companies—two thousand dollars each. There was the attempt to show that the complainant had agreed to share in this expense, but the weight of the evidence was against this.

There was also proof of the large amount of both life and accident insurance carried by the deceased, and its comparatively recent issuance.

From a reading of the testimony the impression is very strong, indeed, that although Dr. Glaser finally acknowledged the control of the coroner, nevertheless the family physicians and attorney were the dominating forces throughout and the complainant's representatives were treated as though they had no interest or rights in the matter.

The lower Court passed an order appointing Dr. George H. Whipple, of Baltimore, receiver, to take charge of the organs then in custody of the clerk of the Court, and directing him to make a full and complete chemical and pathological examination of such organs or remains of organs or to such partial examination as the complainant might require. From that decree this appeal was taken by the widow and daughter.

Two of the main contentions relied upon by the appellants are those of laches and waiver upon the part of the appellee. Necessarily, cases with facts similar to this are rare. This presents no question of the examination of a dead body, with all of its attendant harrowing incidents. The body was buried and no right pressed to exhume it soon after nor at any time. The appellee was not interested in the body, for it had learned, in its first information after the death, that the vital parts had been removed, and it thereupon turned its attention to them for any information it could gather as to the cause of death. It is not apparent what

could have been done by it that was not done to exercise the right given by the positive terms of the policy. The record discloses amazing persistency upon the part of the representatives of the appellee in demanding from the unquestioned representatives of the appellants, the privilege or right to be represented at the examination and were finally driven to file this bill to enforce their rights. It is inconceivable that it should be seriously contended there was any laches upon the company's part. We have above expressed our opinion on the question of waiver, but we can further say, that even if the company had agreed to bear a portion of the expense of the examination, the facts clearly show that it should not be bound by an examination made under the circumstances surrounding this one.

The appellants made the contention, both in the demurrers and the answers, that the proposed examination would amount to a deprivation of their property without due process, within the meaning of the Fourteenth Amendment to the Constitution of the United States and also within the meaning of the like provision of the Constitution of Maryland. Some of the American Courts have followed the old English rule that one cannot dispose of his body after death, but the great weight of authority in this country is that one can dispose of his body by will. See cases cited in 40 *Cyc.* 1050. The Courts hold that the surviving husband or wife or next of kin have a *quasi* property right in the body in the absence of testamentary disposition. The right is not a property right in the general meaning of property right, but is extended for the purpose of determining who shall have the custody of the body in preparing it for burial. And Courts of Equity will protect those having this right from unreaosnable disturbance. But Courts have never hesitated to have a body exhumed where the application under the particular circumstances appeared reasonable and was for the purpose of eliciting the truth in the promotion of justice. *Gray* v. *State*, 22 L. R. A., N. S. 513; *Grangers L. Ins. Co.* v. *Brown*, 57

Miss. 308; *Mutual L. Ins. Co.* v. *Griesa,* 156 Fed. 398. There are several reported cases where the Courts have refused such an examination while recognizing the right, but deeming the application to have been made at too remote a period of time with no attendant circumstances to explain the delay.

In this particular case the bill was filed for the purpose of discovering and preserving evidence, and under virtue of an express agreement entered into by the assured with the insurer, that an examination would be permitted. If this assured died as the result of any cause exclusive of accident then this appellant is not liable for the amount of the policy. We are not concerned in the question of what was the cause of death, but only as to whether the appellee has the right under its contract to investigate so as to learn the truth so far as these organs will show. That these constitutional defenses were not allowed by the lower Court we have no doubt was correct. We are of the opinion that under its contract the appellee had the right to make an examination of the parts superior to any property right in any member of the family of the assured and when the demand was refused their representatives it was the proper course to file a bill for discovery such as has been filed and the relief granted was correct.

We have examined carefully the several exceptions to testimony and do not deem it necessary to deal with them in detail, for irrespective of the rulings we have been unable to discover anything which prejudiced the appellants so as to compel us to reverse the decree rendered.

*Decree affirmed, with costs to the appellee*