## RADOMER RUSS-POL UNTERSTITZUNG-VEREIN *v.* NATHAN POSNER.

[No. 32, January Term, 1939.]

334

*Decided March 8th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Moses Cohen* and *H. Richard Smalkin,* for the appellant.

*Barnett L. Silver* and *Harry Adelberg,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

This appeal is from an order over-ruling the demurrers to a bill of complaint, filed by Nathan Posner, plaintiff, against Radomer Russ-Pol Unterstitzung Verein of Baltimore City, defendant, a corporation owning and operating a cemetery located in Baltimore County, which prayed an injunction to restrain the defendant from interfering with the disinterment and removal by the plaintiff of the remains of his father, Max Posner, from the defendant's cemetery. The defendant cemetery demurred, and alleged, as the sole ground of demurrer, that the court was without jurisdiction to determine the issues raised by the bill. There was another reason given, but by stipulation it was abandoned and not argued before the chancellor, nor in this court.

It has generally and long been recognized that equity only affords an adequate remedy in cases involving the disposition of the bodies of the dead. *Boyce v. Kalbaugh,* 47 Md. 334; *Beatty v. Kurtz,* 2 Pet. (U. S.) 566, 7 L. Ed. 521; *Pulsifer v. Douglass,* 94 Me. 556, 48 A. 118; *Petti-*

*grew v. Pettigrew*, 207 Pa. 313, 56 A. 878; 15 *Am. Jur.* 855; note 3 *L. R. A., N. S.*, 482. An action at law, however, in trespass will lie for the invasion of one's burial lot. *Smith v. Thompson*, 55 Md. 5, 39 Am. Rep. 409.

But the pleadings do not end there. Samuel Posner, a brother of the deceased, Max Posner, and Samuel Posner, a nephew, petitioned the court to intervene as defendants, and an order was passed allowing them to do so, whereupon they filed a demurrer assigning fifteen reasons in number, but only four in fact, namely, insufficiency of the allegations of the bill of complaint, laches, estoppel, and the probability that the body of the deceased has been so long interred as to have disintegrated and become so mixed with the soil as to make disinterment impossible. *Wilson v. Read*, 74 N. H. 322, 68 A. 37. While the demurrer of the cemetery was limited to the question of jurisdiction, which we have said is not tenable, as it, and the Samuels Posner, have joined forces in opposing the bill of complaint, they may and will be treated as joint demurrants to its sufficiency. According to the record there was no resistance by the plaintiff to the petition of the Samuels Posner to intervene, and no appeal taken by the plaintiff from the order allowing them to do so. However, as the case will be remanded, if they have no interest in this controversy there is no reason why we cannot so decide. That question will be discussed further on.

The bill of complaint says that the plaintiff, who resides in Philadelphia, Pa., is a son of the late Max Posner, "* * * who departed this life a number of years ago and now lies buried in the cemetery of the defendant corporation," and that his widow, Eva Posner, the plaintiff's mother, has since died and is buried "* * * in a family plot in a cemetery near the City of Philadelphia." "That in recent years the complainant and his mother on visiting the grave of Max Posner had noted with concern the congestion caused by other graves having been crowded nearby, and she had expressed to him her disappointment that upon her passing away there would be no room for

her beside the grave of her husband, voicing at the same time her keen regret that she had allowed the body of her husband to be buried there"; that on the death of his mother the plaintiff purchased a lot in a Philadelphia cemetery, wherein she was buried, "* * * with the object not only of having a final resting place for the immediate family, but also and most important that after the burial of his mother, the body of his father too might be brought there to be re-interred alongside that of the woman who in life had been to him a faithful companion, a loving wife and a devoted mother to his children," and in a place where the family can more frequently visit the graves of the parents; that the plaintiff came to Baltimore, and at a meeting of the defendant corporation asked for a permit to disinter and remove the body of his father, a request which was "* * * emphatically repulsed and refused." Hence this bill for injunction.

The question here presented, of a resisted disinterment, has never been in this court until now. There have been cases in which the rights of title-holders of burial lots in cemeteries have been involved, in two of which expressions were contained similar to those generally found in cases of contested disinterments. In *Browne v. M. E. Church*, 37 Md. 108, 123, a case wherein the plaintiff claimed a right-of-way through a cemetery of the defendant, this is said: "The appellees have in charge the remains of the dead, whose right of sepulture should not be disturbed, except upon most unequivocal legal grounds; and the appellant, in undertaking to invade their domain, and to dispossess the trustees [of the M. E. Church], ought to be able and prepared to vindicate his claim, and to show by clear and unmistakable proof, that he has been guilty of no laches." See also *Boyce v. Kalbaugh*, 47 Md. 334, 337, 28 Am. Rep. 464.

One of the reasons assigned by the defendants is that on the face of the bill, there is no showing that an exigency exists for the removal of the body. This is not an exigency, but the assertion of a personal right. An exigency would exist when the cemetery is needed for some

public improvement (*Re Beekman Street*, 4 Bradf. [N. Y.] 503 Appendix), or has been abandoned as a place of burial (*Rayner v. Nugent*, 60 Md. 515) or exhumation be necessary to ascertain the cause of death. *Painter v. United States F. & G. Co.*, 123 Md. 301, 91 A. 158; 15 *Am. Jur.* 842, 855, 856.

The defendants cite many cases—more than thirty—which assert that public policy is opposed to disinterments after a body has been once consigned to the earth, but it is a matter of common knowledge that the number of cases cited is infinitesimal as compared with the number of disinterments which never find their way into the courthouse. When they do result in controversy, the courts must define the rights of the parties and ascertain whether there is a valid reason for the disinterment. "A body which has been interred in the ground or deposited in some other place which serves as a final receptacle for mortal remains may be removed therefrom at the instance of a proper person upon the disclosure of a valid reason therefor." 15 *Am. Jur.* 842.

Who then can assert the right of burial or removal after burial? "The courts hold that the surviving husband or wife or next of kin have a *quasi* property right in the body in the absence of testamentary disposition. The right is not a property right in the general meaning of property right, but is extended for the purpose of determining who shall have the custody of the body in preparing it for burial." *Painter v. U. S. Fid. & Guar. Co.*, 123 Md. 301, 308, 91 A. 158, 160; *Meagher v. Driscoll*, 99 Mass. 281, 284; *Pulsifer v. Douglass*, 94 Me. 556, 48 A. 118; 2 *Bl. Com.* 429. "The wishes of wife and next of kin are not always supreme and final though the body is yet unburied. * * * Still less are they supreme and final when the body has been laid at rest and the aid of equity is invoked to disturb the quiet of the grave. * * * The dead are to rest where they have been laid unless reason of substance is brought forward for disturbing their repose." *Yome v. Gorman*, 242 N. Y. 395, 152 N. E. 126.

The opinions of the courts do not lay down any definite or fixed rules, except in cases of public necessity, whereby disinterments may be allowed or disallowed, and go no further than to say what considerations may move a chancellor to act. Citing practically all the cases cited in both briefs, it is said in 15 *Am. Jur.* 844, "Each case must be considered in equity on its own merits, having due regard to the interests of the public, the wishes of the decedent, the rights and feelings of those entitled to be heard by reason of relationship or association, the rights and principles of the religious body or other institution, which granted the right to inter the body at the first place of burial, and determining whether consent was given to the burial in the first place of interment."

Aside from cases of public necessity, the opinions of courts generally regard the factors as controlling in the order of their importance to be, (1) the wishes of the deceased, when they can be ascertained, and in connection with this, the influence of his religious faith in the decision or request; (2) the wishes of the widow or widower, and next after them, the next of kin, if near enough to have their wishes respected; (3) the agreement or regulations of the body maintaining the cemetery. There are many other considerations, such as the crowding out of members of the family, where there is always the wish, or hope, that families may not be widely separated after death, and bodies are brought great distances and much trouble and expense are incurred to express this desire, and it is entitled to consideration, and the agreement or consent of the surviving spouse to the burial. *Pettigrew v. Pettigrew*, 208 Pa. 313, 56 A. 878. The authorities generally seem to hold that a surviving spouse may be permitted to remove the body of a deceased husband or wife under proper circumstances, as where the wife's original interment was understood to be only temporary, or where the husband or wife has not waived the right to such removal. 8 *R. C. L.* 692. "Upon the death of a married person, the surviving spouse has the paramount right as to the custody of the remains of the

deceased and its burial." 17 *C. J.* 1139. With respect, however, to the disinterment after burial, the body is in the custody of the law, and its disinterment and removal subject to the direction and removal of a court of equity in any case properly before it. 17 *C. J.* 1140, and "* * * The right to choose the place of burial primarily belongs to the next of kin, unless there is a surviving spouse in which case he or she has the preference." 17 *C. J.* 1141.

The case of *Pettigrew v. Pettigrew, supra,* is, perhaps, the case most often cited, with respect to disinterments, and in the opinion both sides of such a controversy as we have here can find support for their contentions, but the disinterment was there decreed because, after the original burials, there was no room for the surviving members of the family, so that the crowding of the graves became the determining factor.

The chief contention in this case, in the view of the court, is that the allegations of the bill of complaint are not sufficiently specific. The inference seems to be, though not clearly expressed, that the place where Max Posner was buried did not contain room for the burial of his wife, who, unless there is sound reason to the contrary, should expect to lie down beside him. The bill is devoid of any information as to the reason for the place of his first interment, or of the date of burial ("a number of years ago" may mean anything), and the circumstances under which the burial was made, and whether it was done with the widow's consent or agreement. *Boyd v. Shirk,* 125 Md. 175, 179, 93 A. 417. And aside from all this, the authorities generally seem to hold that the question, when contested, should not be disposed of by a peremptory injunction or a demurrer, but that the facts should be presented to the court, in order that the ends of justice be properly served. *Wilson v. Read,* 74 N. H. 322, 68 A. 37; *Yome v. Gorman,* 242 N. Y. 395, 152 N. E. 126; *Bunol v. Bunol,* 12 La. App. 675, 127 So. 70.

The fact that the Samuels Posner are brother and nephew of Max Posner gives them no right to intervene in this case, because they are not the next of kin, and

have no interest in the subject matter of this proceeding. *Miller's Equity Proc.* 96; 17 *C. J.* 1141. It may be that they were consulted, or were parties to an agreement or understanding with the deceased or his surviving spouse with respect to the brother's and uncle's burial, and unless they can show such interest they are not proper parties to this proceeding. *Sacred Heart of Jesus, P. N. C. Church v. Soklowski,* 159 Minn. 331, 199 N. W. 81. The mere fact that they are brother and nephew of the deceased is no reason, while there is a son surviving as next of kin, who has shown such interest in the matter as to engage in a contest with the cemetery company, which is a proper party.

The defense of laches is unavailing in this case, in the first place because the allegation as to the time of the father's burial is so uncertain that we cannot say, as a matter of law, whether the plaintiff's mother delayed action so long as to forfeit any rights she may have had in her lifetime, nor does it appear that her failure to act has worked a change in the situation to the disadvantage of any one. *Brunton v. Roberts,* 265 Ky. 569, 97 S. W. (2nd) 413; *Mays v. Mays,* 175 Md. 7, 4 A. 2nd 121; *Browne v. M. E. Church, supra.* The allegations with respect to the time of the husband's interment, and the failure of the surviving wife to seek or undertake a removal of his remains, are so uncertain and vague that they require more information than the bill discloses.

For the sole reason that the allegations of the bill are so vague and uncertain, and not more specific as to the details, facts, and circumstances attending the burial, and the failure to sooner act, the order appealed from will be reversed, and the case remanded that an opportunity be afforded the plaintiff to amend his bill of complaint.

*Order reversed with costs, and case remanded.*