76 A.3d 510

Elizabeth UNGER

v.

Marilyn BERGER, Personal Representative of the Estate of Ann Freeman, et al.

No. 1018, Sept. Term, 2012.

Court of Special Appeals of Maryland.

Sept. 25, 2013.

George E. Brown (Ryan A. Mitchell, Kramon & Graham PA, on the brief) Baltimore, MD, for appellant.

James P. Scholtes (David B. Hamilton, Womble, Carlyle, Sandridge & Rice, LLP, on the brief) Baltimore, MD, for appellee.

Panel: ZARNOCH, GRAEFF, JAMES P. SALMON (Retired, Specially Assigned), JJ.

GRAEFF, J.

This appeal involves a dispute between sisters over the final resting place of their aunt, Ann R. Freeman, who is buried in Arlington Cemetery of Chizuk Amuno Congregation ("Arlington") in Baltimore City. The issue presented is one of subject matter jurisdiction, i.e., where a will is probated in one state and the deceased is buried in another state, which court has jurisdiction to resolve a subsequent dispute regarding the proper place of burial. The answer depends on the nature of the claim raised.

Elizabeth Unger, appellant, filed a Petition for Disinterment and Complaint for Specific Performance in the Circuit Court for Baltimore City, alleging that Ms. Freeman's Last Will and Testament (the "Will") directed Marilyn Berger, appellee, to bury Ms. Freeman's remains in a burial plot next to her deceased husband in King Solomon Cemetery ("King

Solomon") in New Jersey.[1] Ms. Berger filed a Motion to Dismiss the Complaint, which the circuit court granted on the ground that it lacked subject matter jurisdiction.

On appeal, Ms. Unger raises a single question for our review, which we have rephrased as follows:

Did the circuit court err in dismissing the Complaint on the grounds that it lacked subject matter jurisdiction?

For the reasons set forth below, we shall affirm in part and reverse in part the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 28, 2007, while residing in Florida, Ms. Freeman executed the Will and appointed Ms. Berger as her Personal Representative. The Will indicated that Ms. Freeman previously had made arrangements to be buried at King Solomon, and she had directed her "Personal Representative to take whatever action may be necessary to assist in fulfillment of those instructions."

At some point after executing the Will, Ms. Freeman moved to DeKalb County, Georgia, where she resided with Ms. Berger until she required hospitalization. In October 2009, she moved into Summer's Landing, an assisted living facility in Georgia.[2]

On April 21, 2010, Ms. Freeman died in Georgia. Ms. Freeman was deeply religious, and therefore, Ms. Berger arranged for her body to be cared for in accordance with strict Jewish law, including the ritual bathing of her body by a

---

**1.** Chizuk Amuno Congregation, Inc., is owner of Arlington and also an appellee. A cemetery may be named as a party in a petition for disinterment "so that it will be bound by, and have the protection of, any ultimate court order." *Kline v. Green Mount Cemetery*, 110 Md. App. 383, 396, 677 A.2d 623 (1996).

**2.** According to Ms. Berger, despite Ms. Unger's assertion that she "enjoyed a lifelong and close relationship with her 'Aunt Ann,'" Ms. Freeman and Ms. Unger were estranged, and Ms. Unger, a resident of Florida, never visited Ms. Freeman during her hospitalizations or while she lived at Summer's Landing. Ms. Unger was not mentioned in the Will.

Jewish burial society and a watcher who guarded her body prior to burial. Ms. Freeman's body was then transported from Georgia to Maryland and buried in Ms. Freeman's family plot in Arlington.

Ms. Berger asserts that Ms. Freeman was buried at Arlington because, after executing the Will, Ms. Freeman "clearly and unambiguously" instructed Ms. Berger to bury her there. Ms. Berger explained that, in addition to being Personal Representative, she also had a full power of attorney and authority over Ms. Freeman's affairs.

On February 28, 2011, Ms. Unger filed a petition to probate the Will with the Probate Court of DeKalb County, Georgia.[3] In the petition, Ms. Unger sought to have the Will admitted to probate "so that she can petition for sanctions against [Ms. Berger] for failing to carry out the deceased's burial instructions as set forth in ... the Will." Both Ms. Unger and Ms. Berger engaged counsel in Georgia to represent them in the dispute.

On August 9, 2011, prior to a ruling by the DeKalb County Probate Court, Ms. Unger filed a voluntary dismissal of her petition, without prejudice.[4] Three days after filing her voluntary dismissal in the DeKalb County Probate Court, a Notice of Disinterment was published in *The Daily Record* in Maryland on behalf of Ms. Unger and Ted Freeman, Ms. Freeman's step-grandson. On September 21, 2011, Ms. Unger filed an unverified *ex parte* Petition for Disinterment and Reinterment in the Circuit Court for Baltimore City.[5] On November 1, 2011,

---

3. The parties agree that DeKalb County, Georgia is the proper venue for probating the Will and administering the estate. *See Zeh v. Griffin*, 257 Ga. 364, 359 S.E.2d 899, 899 (1987) ("[A] will executed out-of-state by one who is a Georgia resident at his death is not a 'foreign will' "; thus, the local probate courts have jurisdiction.).

4. On July 9, 2012, the date of the hearing on Ms. Berger's Motion to Dismiss the case giving rise to this appeal, the estate remained open in Georgia, and probate was still pending.

5. Ms. Berger stated, in an affidavit, that she was not notified, personally, or in her capacity as Personal Representative, of the notice published in *The Daily Record*, or of the *ex parte* petition.

the circuit court dismissed the *ex parte* petition, finding, *inter alia*, that it was "improper as it was not brought as an adversarial action" against Ms. Berger.

On November 15, 2011, Ms. Berger, in her capacity as Personal Representative, filed a Complaint for Damages in the Superior Court of DeKalb County against Ms. Unger and Mr. Freeman, seeking damages for their unlawful actions and wrongful conduct with respect to Ms. Berger's administration of Ms. Freeman's estate. Ms. Unger and Mr. Freeman subsequently filed a Motion to Dismiss the Complaint, asserting that the Superior Court did not have personal jurisdiction over them. On April 11, 2012, the Superior Court denied Ms. Unger and Mr. Freeman's motion finding that it did have personal jurisdiction.

In the interim, on December 20, 2011, Ms. Unger filed the Petition for Disinterment and Complaint for Specific Performance that is the subject of this appeal. Ms. Unger asserted that "[t]his case involves the willful disregard of Ann R. Freeman's Last Will and Testament, wherein she directed her Personal Representative, Defendant Marilyn Berger, to bury her in New Jersey, in a burial plot next to her deceased husband." Ms. Unger alleged that, in addition to the explicitly stated desires in the Will, Ms. Freeman also had expressed to Ms. Unger, in "multiple conversations," her desire to be buried beside her husband. The Complaint contained three counts: (1) a petition for disinterment, alleging that the Will unequivocally reflected Ms. Freeman's intention to be buried in New Jersey, but that Ms. Berger wrongfully had buried her in Maryland; (2) Ms. Berger had breached her fiduciary duty as Personal Representative by failing to carry out the express terms of the Will; and (3) specific performance against Ms. Berger and Arlington. The Complaint requested that Ms. Freeman be disinterred from her current burial site, that her remains be reinterred in New Jersey, and that Ms. Berger pay the costs associated with this relief.

On March 12, 2012, Ms. Berger filed a motion to dismiss asserting, *inter alia*, that the circuit court did not have subject

matter jurisdiction because the Georgia probate court had original, exclusive jurisdiction over controversies arising from the administration of Ms. Freeman's estate. She asserted that the proper procedure was to seek relief in the probate court, in Georgia, and in the event that Ms. Unger was successful, to then seek disinterment in Maryland.

On July 9, 2012, the court held a hearing on the Motion to Dismiss. At the conclusion of the hearing, the court found that it lacked subject matter jurisdiction, noting that "the true subject matter in this case" was not where the body was buried, but rather, "the testamentary and estate issues," which the court found should be litigated in the Georgia probate court. Accordingly, it granted Ms. Berger's Motion to Dismiss.

## STANDARD OF REVIEW

■ " 'The proper standard for reviewing the grant of a motion to dismiss is whether the trial court was legally correct.' " *Higginbotham v. Public Service Comm'n of Maryland,* 171 Md.App. 254, 264, 909 A.2d 1087 (2006) (quoting *Britton v. Meier,* 148 Md.App. 419, 425, 812 A.2d 1082 (2002)). *Accord Reichs Ford Road Joint Venture v. State Roads Comm'n of the State Highway Administration,* 388 Md. 500, 509, 880 A.2d 307 (2005) ("We review the grant of a motion to dismiss *de novo.*"). We will find that dismissal was proper only " 'if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff.' " *Sprenger v. Public Service Comm'n of Maryland,* 400 Md. 1, 21, 926 A.2d 238 (2007) (quoting *Pendleton v. State,* 398 Md. 447, 459, 921 A.2d 196 (2007)) (citations omitted). Dismissal of an action on a preliminary motion for lack of subject matter jurisdiction is proper only if the facts and allegations establish a lack of subject matter jurisdiction. *Lewis v. Murshid,* 147 Md.App. 199, 203, 807 A.2d 1170 (2002).

## DISCUSSION

Ms. Unger contends that the circuit court erred in ruling that it lacked subject matter jurisdiction for three reasons.

First, she argues that, because Ms. Freeman's remains are buried in Maryland, they are "in the custody of Maryland law," and only a Maryland court has subject matter jurisdiction over the claim for disinterment of the remains. Second, she asserts, "the language in the Will concerning Ms. Freeman's burial wishes is clear and unambiguous and, therefore, does not require any interpretation." Third, Ms. Unger contends that, "whether Ms. Berger breached her fiduciary duties as the Personal Representative is irrelevant to the determination of whether Ms. Unger should be permitted to disinter Ms. Freeman's remains."

Ms. Berger contends that the circuit court "properly dismissed appellant's complaint because it lacked subject matter jurisdiction over this testamentary dispute." She argues that both Georgia and Maryland law provide that the county where the deceased was domiciled is the proper probate court, and therefore, the "proper venue for probating the Will and administration of the Estate lies in DeKalb County, Georgia." Ms. Berger asserts that the proper procedure would be for Ms. Unger to re-file her petition to probate the Will in the Georgia probate court, and if she is successful in enforcing the provision in the Will concerning the place of burial, "Ms. Unger could then seek disinterment of Ms. Freeman's body in Maryland and reinterment in New Jersey with the proper legal support of an Order from the DeKalb County Probate Court—the court with subject matter jurisdiction over this testamentary dispute."

In her Reply Brief, Ms. Unger concedes that "Georgia is the appropriate venue for an action to probate the Will or an action concerning the administration of Ms. Freeman's Estate." She argues, however, that this was not the issue before the circuit court; rather, the "primary relief" sought in the circuit court was an order for the disinterment of Ms. Freeman's remains for the purpose of reinterring them in New Jersey.[6]

---

6. At oral argument, counsel for Ms. Unger conceded that the circuit court properly dismissed Count II of the Complaint, asserting that Ms.

■■ It is clear that courts have jurisdiction to resolve disputes regarding disinterment; once a body has been buried, it "is subject to the control of a court of equity." *Dougherty v. Mercantile–Safe Deposit and Trust Co.*, 282 Md. 617, 620, 387 A.2d 244 (1978). *Accord Radomer Russ–Pol Unterstitzung Verein of Baltimore v. Posner*, 176 Md. 332, 339, 4 A.2d 743 (1939). There is, however, no right to disinterment. *Kline v. Green Mount Cemetery*, 110 Md.App. 383, 388, 677 A.2d 623 (1996). Rather, it is a disfavored action, and a request for disinterment generally is granted only for good cause. *See Dougherty*, 282 Md. at 620, 387 A.2d 244 (" 'The dead are to rest where they have been laid unless reason of substance is brought forward for disturbing their repose.' ") (quoting *Yome v. Gorman*, 242 N.Y. 395, 152 N.E. 126, 129 (1926)); *Kline*, 110 Md.App. at 398, 677 A.2d 623 ("the normal treatment of a corpse, once it is decently buried, is to let it lie"). *Accord In re Estate of Thomas*, 431 N.J.Super. 22, 66 A.3d 205, 214 (N.J.Super.Ct.App.Div.2013) (If "private interests generate the request, disturbance of a decedent's remains should not occur 'unless it be clearly shown that good cause and urgent necessity for such action exist.' ") (quoting *Petition of Sheffield Farms Co.*, 22 N.J. 548, 126 A.2d 886, 891 (1956)).[7]

Here, however, the issue before us is not whether disinterment is proper. Rather, the issue is whether the circuit court

---

Berger breached her fiduciary duty as Personal Representative by failing to carry out the express terms of the Will that Ms. Freeman's remains were to be buried in New Jersey.

7. In *Radomer Russ–Pol Unterstitzung Verein of Baltimore City v. Posner*, 176 Md. 332, 4 A.2d 743 (1939), the Court of Appeals stated that the following factors are to be considered in determining whether to order disinterment:

(1) the wishes of the deceased, when they can be ascertained, and in connection with this, the influence of his religious faith in the decision or request; (2) the wishes of the widow or widower, and next after them, next of kin, if near enough to have their wishes respected; (3) the agreement or regulation of the body maintaining the cemetery.

*Id.* at 338, 4 A.2d 743.

properly found that it did not have subject matter jurisdiction to address the issues raised in the Complaint.

■ Under Georgia law, probate courts "have authority, unless otherwise provided by law, to exercise original, exclusive, and general jurisdiction of ... (3) *All controversies in relation to the right of ... administration*" of wills and estates, Ga.Code Ann. § 15–9–30(a)(3) (emphasis added), as well as over "(10) All other matters and things as appertain or relate to estates of deceased persons." Ga.Code Ann. § 15–9–30(a)(1). Georgia probate courts have broad power over all matters within their jurisdiction. *Heath v. Sims,* 242 Ga.App. 691, 531 S.E.2d 115, 117 (2000) ("[W]ith respect to areas in which the probate court has been given exclusive, original subject matter jurisdiction, its authority is broad."). That broad authority extends to claims regarding whether an executor has breached a fiduciary duty. *Id.*

■ Accordingly, the Georgia probate court had exclusive jurisdiction over the subject matter of Count II of the Complaint, which asserted that Ms. Berger breached her fiduciary duty as Personal Representative by failing to follow the provisions of the Will stating Ms. Freeman's intent to be buried in New Jersey. Indeed, as indicated, Ms. Unger conceded at oral argument that the court's ruling dismissing this count was proper.

■ With respect to Count I, however, which sought disinterment of Ms. Freeman's remains, the analysis differs. Ms. Unger argues that the Baltimore City circuit court is the only court with jurisdiction over Ms. Freeman's remains, and therefore, it had subject matter jurisdiction to order the body disinterred. In support, Ms. Unger relies on *In re Estate of Robert Lee Medlen,* 286 Ill.App.3d 860, 222 Ill.Dec. 220, 677 N.E.2d 33 (1997).

In *Medlen,* the petitioner filed a petition in the probate case to have the decedent exhumed for DNA testing, alleging that the decedent was the father of her daughter, who was entitled to workers' compensation death benefits. *Id.* 222 Ill.Dec. 220,

677 N.E.2d at 34. One of the issues on appeal was whether the court had jurisdiction to order the decedent's body exhumed in another state. *Id.* 222 Ill.Dec. 220, 677 N.E.2d at 35. In concluding that it did not, the Illinois appellate court explained that, although relatives of the deceased have "a quasi-property right in the body; this right arises out of their duty to bury the dead," and once the body is buried, it becomes " 'part and parcel of the ground to which it is committed.' " *Id.* 222 Ill.Dec. 220, 677 N.E.2d at 36 (quoting 25A C.J.S. *Dead Bodies* § 2 (1966)). The dead body "forms no part of the decedent's estate." *Id.* Thus, the Court stated: "[B]ecause the dead body, after burial, becomes part of the land and is said to be within the 'custody of the law,' we believe that a court can only resolve a dispute over disinterment when the body is within that state's territorial jurisdiction." *Id.*

In response to the petitioner's argument that, because the court had personal jurisdiction over the interested parties, it therefore had the power to act in an extraterritorial manner over the body, as property, the court stated:

The court had jurisdiction over the estate and the parties, but neither the body nor the land in which it is buried is in the possession of the parties or the estate. The court could not act indirectly on the dead body by acting directly on the parties before it because the body was not within their control. The body became part of the land of West Virginia and is in the custody of the law of that jurisdiction. By ordering an exhumation, the court was ordering someone in West Virginia, over whom it had no jurisdiction, to do something.

*Id.* 222 Ill.Dec. 220, 677 N.E.2d at 36–37.

The Court concluded that, "[a]lthough exhumation disputes are within the subject matter jurisdiction of the circuit court, the court cannot order an exhumation when the body is buried in another state." *Id.* 222 Ill.Dec. 220, 677 N.E.2d at 37. Accordingly, it held that petitioner needed to file her petition for exhumation in West Virginia, where the body was located.

■ We are persuaded by this analysis and similarly hold that a court cannot order a disinterment of a body that is not within the court's territorial jurisdiction. Accordingly, we agree with Ms. Unger that only a Maryland court can order disinterment of Ms. Freeman's remains.

■ The question then is whether it is necessary for the Georgia probate court to first determine whether the initial burial in Maryland was improper. We hold that such a finding is not required because, contrary to the decision of the circuit court, this is no longer an estate issue subject to the exclusive jurisdiction of the Georgia court. As indicated, once the body is buried, it "forms no part of the decedent's estate." *Medlen,* 222 Ill.Dec. 220, 677 N.E.2d at 35. *See also Snyder v. Holy Cross Hospital,* 30 Md.App. 317, 329, 352 A.2d 334 (a dead body is not part of the assets of the estate), *cert. denied,* 276 Md. 750 (1976). Accordingly, the circuit court had subject matter jurisdiction over Counts I and III, seeking disinterment of the body in Baltimore City, and we reverse the ruling dismissing those counts.[8]

On remand, the circuit court should hold a hearing to determine if there is good cause justifying the disfavored relief of disinterment. In that regard, the court should look to the terms of the Will and other evidence regarding Ms. Freeman's wishes. *See* B.C. Ricketts, Annotation, *Validity and Effect of Testamentary Direction as to Disposition of Testator's Body,* 7 A.L.R.3d 747 § 3(b) (1966) ("Courts have held that a person's testamentary directions for the disposition of his remains may be altered or canceled informally.") (collecting cases); *In re Scheck's Estate,* 172 Misc. 236, 14 N.Y.S.2d 946 (N.Y.Surr.Ct.1939) ("[T]he right of a particular decedent, from

---

8. There are, however, some practical issues generated in proceeding in this manner. Although we need not address them in this opinion, we note that, as part of the relief requested, Ms. Unger seeks an order requiring Ms. Berger to pay the costs for the disinterment and reinterment in New Jersey. No authority for granting such relief has been asserted in this Court to support: (1) assessing costs against Ms. Berger without a finding of a breach of fiduciary duty; or (2) ordering New Jersey to reinter Ms. Freeman's body.

time to time in his discretion, to vary the directions respecting disposal of his remains, [requires] that the inquiry of the court must be directed to the ascertainment of the latest expression of wish by the testator on the subject."). *See also Edery v. Edery,* 193 Md.App. 215, 235, 996 A.2d 961 (2010) (deceased's statements regarding where she wanted to be buried were admissible under the state of mind exception to the hearsay rule).

**JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. COSTS TO BE PAID BY 50% BY APPELLANT AND 50% BY APPELLEE.**