ELIZABETH L. DOUGHERTY *v.* MERCANTILE-SAFE
DEPOSIT AND TRUST COMPANY AND ALLAN
H. FISHER, JR., Personal Representatives
of the Estate of Patrick F.
Dougherty, Sr.

[No. 126, September Term, 1977.]

*Decided May 24, 1978.*

618

*Motion for reconsideration filed June 9, 1978; denied June 16, 1978.*

The cause was argued before SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Frank Cannizzaro* for appellant.

*David M. Tralins* for appellees.

COLE, J., delivered the opinion of the Court.

This case is an appeal from a decree denying a widow the right to disinter her husband.

Elizabeth L. Dougherty (Elizabeth) and Patrick F. Dougherty, Jr. (Junior) were married in Baltimore City on December 31, 1971 after a long acquaintance. Suddenly on June 20, 1972, Junior died intestate and without having made any plans in case of his death. Elizabeth notified her father-in-law, Patrick F. Dougherty, Sr. (Senior) of her husband's death, which was also the first knowledge that Senior had that Junior and Elizabeth were married, though Elizabeth was known by the Dougherty family. Senior expressed concern that he would have to bear the expense of the funeral; however, Elizabeth assured him that she would assume all funeral costs. The next day, following Junior's

death, Senior called Elizabeth and told her he had seven lots at Dulaney Valley Memorial Gardens and wanted Junior buried there. He said that she could be buried next to Junior, if she desired, provided she did not remarry and provided that Senior could approve the design of any grave marker. Elizabeth testified that she agreed to Senior's proposition because of the difficulty in selecting a lot at that time [1] and the pressure stemming from her husband's sudden death.

On June 23, 1972, Junior's body was interred in Lot B-4 of the Dougherty family plot and Lot B-3 was designated as the lot reserved for Elizabeth.

Elizabeth paid for the funeral and for a period thereafter attempted to have Senior reduce to writing his promise to allow her to put a proper marker on Junior's grave. Senior refused to put anything in writing but insisted that any marker must meet his approval. Elizabeth offered to buy the lots, but Senior refused to sell. Elizabeth then threatened to remove Junior's remains if she could not be buried there. The parties referred the matter to their respective lawyers but the answer from Senior remained the same.

On October 18, 1974, Geraldine M. Dougherty, Junior's sister, died and was buried in B-3, the lot reserved for Elizabeth. Elizabeth instituted these proceedings against Senior to disinter her husband with the intention of moving his body to one of two adjoining sites she had purchased in the same cemetery. Senior died on January 7, 1975 and his personal representatives, substituted as respondents, along with Carol, the sole Dougherty survivor, agreed to give effect to the agreement between Elizabeth and Senior by removing the remains of Geraldine from B-3 to another space in the family plot and thereby reserving B-3 for Elizabeth. Elizabeth refused to accept this compromise.

The matter was tried before the Circuit Court of Baltimore City (Sullivan, J.) which decided that Senior had been distressed over the death of four members of his family in four years (which included two of his children) and had made a mistake in burying Geraldine in B-3. The court ordered the

---

1. Hurricane Agnes had reached Baltimore City causing torrential rains and flooding.

personal representative to remove Geraldine's remains from B-3 and to reserve that lot so that Elizabeth could be buried beside her husband. Elizabeth appealed to the Court of Special Appeals and we granted certiorari prior to consideration by that court.

Our predecessors decided in *Unterstitzung Verein v. Posner,* 176 Md. 332, 4 A. 2d 743 (1939), that the wife, upon the death of her husband, has the paramount right to possession of his body [2] and to decide the place of sepulture. However, when the duty to furnish proper burial has been discharged, the right of custody ceases and the body is thereafter in the custody of the law and disinterment or disturbance of the body is subject to the control of a court of equity. *Pettigrew v. Pettigrew,* 207 Pa. 313, 56 A. 878 (1904). Justice Cardozo stated the proposition rather succinctly in *Yome v. Gorman,* 242 N. Y. 395, 403, 152 N. E. 126, 129 (1926): "The dead are to rest where they have been laid unless reason of substance is brought forward for disturbing their repose."

Thus, any right of the wife to remove the body after it is interred is conditioned upon her having a sound reason. There have been instances when the courts have granted permission, *e.g.,* when the initial interment was understood to be temporary, *Sacred Heart of Jesus Polish Nat'l Catholic Church v. Soklowski,* 159 Minn. 331, 199 N. W. 81 (1924); *McMillan v. Gentry,* 96 Okla. 235, 221 P. 717 (1923); *Pulsifer v. Douglass,* 94 Me. 556, 48 A. 118 (1901), or where there is a lack of room for the spouse to be buried beside the deceased, *Leschey v. Leschey,* 374 Pa. 350, 97 A. 2d 784 (1953), or the body is wrongfully interred in the lot of a plot owner, *Hughes v. Harden,* 194 Okla. 307, 151 P. 2d 425 (1944).

2. It is universally recognized that there is no property in a dead body in a commercial or material sense. "[I]t is not part of the assets of the estate (though its disposition may be affected by the provision of the will); it is not subject to replevin; it is not property in a sense that will support discovery proceedings; it may not be held as security for funeral costs; it cannot be withheld by an express company, or returned to the sender, where shipped under a contract calling for cash on delivery; it may not be the subject of a gift *causa mortis;* it is not common law larceny to steal a corpse. Rights in a dead body exist ordinarily only for purposes of burial and, except with statutory authorization, for no other purpose." Snyder v. Holy Cross Hosp., 30 Md. App. at 328 n.12, quoting P. E. Jackson, *The Law of Cadavers and of Burial and Burial Places.* (2nd ed. 1950).

However, where an interment takes place with the consent, express or implied, of those most interested, the interment is regarded in law as a final sepulture. *Fowlkes v. Fowlkes,* 133 S.W.2d 241 (Tex. 1939); *Bunol v. Bunol,* 12 La. App. 675, 127 So. 70 (1930); *Stiles v. Stiles,* 113 Misc. 576, 185 N.Y.S. 53 (1920). This is particularly of great weight where the surviving spouse consents to the initial place of burial, *Peters v. Peters,* 43 N.J. Eq. 140, 10 A. 742 (1887), unless the spouse can show that the consent was obtained through coercion or was otherwise involuntary. *McEntee v. Bonacum,* 66 Neb. 651, 92 N. W. 633 (1902).

Elizabeth contends that she has a substantial reason to justify disinterment. She asserts first, that the consent she gave to Junior's burial in the Dougherty plot stemmed from her grief and the pressure due to the weather and the investigation by the police; second, that the burial site was only temporary; and that Junior's sepulture was conditioned upon her being able to be buried next to him and her being able to select a proper grave marker. She claims that Senior thwarted her efforts to select a proper grave marker and violated the terms under which Junior was interred by refusing to state in writing his promise that she could be buried in B-3 and finally by burying his daughter, Geraldine, in that very same lot. She contends that under these facts the chancellor was clearly in error when he ordered the body of Geraldine to be removed so that B-3 would be available for her burial beside Junior and thus consummate the original agreement.

The scope of appellate review in a non-jury case is set forth in Maryland Rule 886:

> When an action has been tried by the lower court without a jury, this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses.

If there is substantial evidence to support the trial court's

factual conclusion, that finding must be reviewed in the light most favorable to the prevailing party below and the appellate court should accept that conclusion. *Clemson v. Butler Aviation,* 266 Md. 666, 296 A. 2d 419 (1972); *Crosse v. Callis,* 263 Md. 65, 282 A. 2d 86 (1971); *Burroughs Int'l Co. v. Datronics,* 254 Md. 327, 255 A. 2d 341 (1969); *Hamilton v. Smith,* 242 Md. 599, 219 A. 2d 783 (1966).

In the case *sub judice,* the chancellor heard all of the witnesses and concluded from the evidence, as a matter of fact, that Geraldine's burial in B-3 was a mistake and that since Carol agreed that B-3 would be available upon Geraldine's removal, Elizabeth had no valid reason for Junior's disinterment.

Elizabeth contends that the chancellor erred when he found as a fact that Senior made a mistake when he buried Geraldine in B-3. She relies on the testimony of Charles Grove (Grove), President of Dulaney Valley Memorial Gardens, Inc. as proof that Senior did not want Elizabeth buried next to his son. Grove testified that the policy of the cemetery was to bury a wife to the left of her husband but that the final decision rests with the lot owner. When Grove informed Senior of this policy he "was not certain that [Senior] said anything" but nevertheless concluded that Senior "had apparently made up his mind." [3] Grove testified he told Senior that the burial of Geraldine in B-3 would eliminate a gravesite for Elizabeth. His response was "I want it that way." Elizabeth contends that this is strong evidence that Senior's burial of Geraldine in B-3 was intentional and unmistakable. On cross examination, Grove admitted that Senior's health was deteriorating and that he died shortly after Geraldine's burial.

Testimony was also adduced from Allan H. Fisher, Jr. (Fisher), Senior's personal lawyer and advisor for many years and now co-executor under his will. Fisher testified that Senior was a very sick man and "in perfectly horrible shape" at the time of Geraldine's burial. He said that Senior had buried an immediate member of his family once a year for

---

3. B-3 is to Junior's right rather than left.

four years preceding his own death and was very distressed and despondent. He further indicated that Senior was relying on him for many services and that he had asked Senior whether Geraldine was buried next to Junior and Senior said she was not. Thus, Fisher testified that Senior was mistaken in the location of his daughter's burial.

We cannot say in view of this conflict in testimony, and considering the personal relationship between Fisher and Senior, the obvious condition of Senior's health, and the emotional strain produced by repeated deaths in his family, that the chancellor was clearly in error in finding that the burial of Geraldine in B-3 was a mistake. We have said many times that the trial court is not only the judge of the credibility of the witness, but is also the judge of the weight to attach to the evidence. *Knowles v. Binford,* 268 Md. 2, 298 A. 2d 862 (1973).

Elizabeth, nevertheless, contends that the chancellor exceeded his authority in ordering the removal of Geraldine to provide burial space beside Junior. However, she has no standing to contest this action. The only parties who have standing to object are the personal representative and Carol Dougherty, both of whom urged this action upon the chancellor in order to fulfill the agreement.

Both sides of this controversy rely upon *Unterstitzung Verein v. Posner, supra* as dispositive of the issue before the chancellor. In that case, one of first impression in Maryland, one Nathan Posner filed a bill in equity praying an injunction against the defendant cemetery from interfering with the removal of the remains of his father from its cemetery. The reason for the proposed disinterment was congestion and overcrowding and the complainant desired that his mother be buried next to his father. The cemetery appealed from an order overruling its demurrer. Our predecessors held that the allegations of the bill were vague and reversed and remanded. In doing so, they set forth certain guidelines to be considered by the chancellor in deciding whether the surviving spouse had a sound reason for disinterment.

In the instant case the chancellor applied those criteria to the facts as he found them. He stated:

> As to whether a valid reason exists for such action, [Unterstitzung] suggests the following factors to be controlling in order of importance: (1) the wishes of the deceased, (2) the wishes of the widow/widower and next of kin ... and (3) the regulations of the cemetery. Here there were no expressed wishes of the deceased concerning his interment. . . . As for the wishes of the widow, Mrs. Dougherty wants the body removed since she can no longer be buried next to her husband. At the same time, Carol Dougherty, sister to Patrick, Jr. and the sole surviving member of the immediate Dougherty family, has testified that she is opposed to her brother's disinterment. Finally, the cemetery apparently does not object to the disinterment based upon any of its regulations.

After a consideration of these factors and others, the chancellor concluded "a valid reason does not exist for the disinterment of Patrick Dougherty, Jr., a more appropriate alternative exists under these circumstances."

The chancellor gave due consideration to all factors presented by the evidence and in doing so decided who he believed and the weight to be given the testimony. He found that Elizabeth had no valid reason for disinterment, and concluded that her consent was voluntary and not unduly influenced; that the initial interment was not temporary; that Senior's burial of Geraldine in B-3 was a mistake; and that the removal of Geraldine's body would provide space for Elizabeth beside her husband. In light of these facts the chancellor concluded that the aspirations of all the parties could reasonably be met without disturbing the body and he shaped the relief to attain this end.

Based upon our examination and review of the evidence we cannot say that the decree entered by the chancellor was clearly erroneous.

*Decree affirmed; appellant to pay the costs.*